HARRY B. CLARK v. ST. JOSEPH TERMINAL RAILROAD COMPANY, Appellant.

In Banc, May 20, 1912.

1. **APPEAL: Affidavit: Officer's Name Omitted: Supplied Nunc Pro Tunc.** An affidavit for an appeal, complete in every respect except that the officer's name to his jurat is omitted, his seal being attached, may be supplied by the trial court, at a subsequent term, on the testimony of the affiant that he swore to the affidavit before the officer who has since died.

2. **NEGLIGENCE: Different Acts in Same Count: Common Law and Statutory.** All negligent acts, whether common law or statutory, are negligence, and a number of negligent acts may go towards producing the injury; and several acts of negligence of the same general nature, all of which may be true, and either of which or all of which may have caused the injury, may be placed in one count of the petition, and that, too, whether they constitute negligence at common law or negligence under the statute.

3. ————: ————: **Humanitarian Doctrine and Negligence.** An act of negligence which brings the case within the humanitarian rule may be alleged along with other acts of negligence in the same count of the petition. Acts which are alleged to have been the cause of the injury, though defendant was himself not negligent, may be alleged in the same count along with other allegations charging that defendant negligently failed to stop the train after plaintiff was in a position of peril, whether or not his perilous position was occasioned by his own negligence —provided the acts bringing the case under the humanitarian rule and the other acts of negligence are not inconsistent and self-contradictory.

*Held*, by WOODSON, J., dissenting, that plaintiff cannot recover according to the common law rule if he was guilty of contributory negligence, nor according to the humanitarian rule unless he was guilty of negligence which placed him in a perilous position and defendant saw, or by the exercise of ordinary care could have seen, his peril in time to have avoided his injury, but negligently failed to do so, and in consequence he was injured; nor can he state a cause of action under the humanitarian rule unless he alleges those things, and those two causes of action cannot be united in the same petition, in the same or in separate counts, for the reason that they are inconsistent with each other, and both cannot be true. It cannot be truthfully said that plaintiff was free from negligence under the common law count, and guilty of negligence under the humanitarian count.

4. ————: **Contributory: Street Car: Crossing Railroad Tracks: Custom.** The statute requires street railway cars, in attempting to cross railroad tracks, to stop not less than ten nor more than twenty feet from the railroad crossing; and where there were four railroad tracks, almost parallel and close together, and there was ample space (105 feet) between the third and fourth tracks for plaintiff, in attempting to cross them with his street car, to have stopped his car in safety, and he did not do so, and was struck by a train on the fourth track, he was guilty of contributory negligence, and he must recover, if at all, under the humanitarian rule. Said statute

cannot be repealed by custom and plaintiff, in view of the ample space for safety between the tracks, was no less guilty of contributory negligence because it had for a long time been the custom to stop the cars upon approaching the first track and then start up and run across all four tracks without stopping.

5. ————: ————: ————: Not Prompt Attempt to Stop Car: Rate of Speed. A street car, with all its appliances in working order, running three miles an hour, over railroad tracks, can be stopped in less than thirty feet; and a motorman, who was thirty or thirty-five feet from the railroad track when he saw the railroad train approaching on the track he was attempting to cross, was guilty of actual negligence in not stopping his car, running three miles an hour, before it reached the railroad crossing.

6. ————: ————: Humanitarian Rule: Recovery Nevertheless. Notwithstanding plaintiff was guilty of both statutory and actual negligence in attempting to cross his street car over the railroad track without stopping, and by such negligence had placed himself in a position of peril, defendant is liable, if by the exercise of ordinary care its servants in charge of its railroad train which struck plaintiff's street car, could have seen (but did not see) his position of peril in time to have averted the injury, the place being one where defendant had no right to expect a clear track and was in duty bound to be on the lookout. And the facts of this case clearly show that defendant, after plaintiff's peril was apparent, could have seen the danger in ample time to have averted a collision, and was negligent in not doing so, and the court properly refused a demurrer to the evidence.

Held, by WOODSON, J., dissenting: first, that both plaintiff and defendant's servant in charge of the railroad train were negligent, and either by the exercise of ordinary care could have avoided the accident, but plaintiff being in charge of a passenger car, which required the exercise of the highest degree of care, and defendant of an empty train, which required only ordinary care, to permit plaintiff to recover would be to abrogate the common law rule of negligence; and second, since plaintiff's car was running about three miles an hour and defendant's train five or six, plaintiff and defendant's servant on the rear of the backing train were equally capable of seeing the other, and if that servant could have seen plaintiff in time to have averted the injury and did not, it is also true plaintiff could have seen that servant just as quickly, and under such facts the humanitarian rule does not apply.

7. ————: ————: Instruction: Street Car Crossing Railroad Track: Ordinary Care: Attempt to Stop. Where the statute requires a street car to stop not less than ten nor more than

twenty feet from a railroad track before attempting to cross, a plaintiff motorman is not excused by using ordinary care to stop in time to avoid a collision. Ordinary care and diligence is not the measure of the motorman's duty; only the highest degree of care is.

8. ———: ———: ———: ———: **Physical Facts.** Where the testimony and the physical facts demonstrate that plaintiff was guilty of actual negligence contributing directly to his injury, the court should so declare as a matter of law, and not permit him to recover on the theory that he was guilty of no negligence. Under such circumstances the instructions should be confined to the humanitarian rule.

9. **INSTRUCTIONS:** Assumption of Facts. Instructions should never assume as true facts about which there is a controversy.

Appeal from Buchanan Circuit Court.—*Hon. H. M. Ramey*, Judge.

REVERSED AND REMANDED.

*R. A. Brown* for appellant.

The demurrer offered by the defendant at the close of plaintiff's case and again at the close of defendant's case should have been sustained: (a). By statute and by ordinance, plaintiff was required to stop the street car being operated by him, not less than ten feet south of the south rail of the Union Depot track at the point where the collision occurred. R. S. 1909, sec. 3303; Rev. Ordinances of St. Joseph, sec. 1079. The provisions of the statute and of the ordinance are mandatory and imposed a positive duty upon the plaintiff to stop his car at least ten feet south of the south rail of the Union Depot track, and his failure to stop his car and to comply with the provisions of the Statute and the ordinance was negligence *per se*. Sluder v. Transit Co., 189 Mo. 107; Moore v. Transit Co., 194 Mo. 1; Deitring v. Transit Co., 109 Mo. App. 524; Jackson v. Railroad, 157 Mo. 621; Mulderig v. Railroad, 116 Mo. App. 655; Heintz v. Transit Co., 115 Mo. App. 667; Wills v. Railroad, 133 Mo. App. 625; Railroad v. Owen, 132 Ala. 420; Railroad

v. Murray, 53 Ohio St. 570. (b) Independent of any obligation imposed upon him by statute or ordinance, it was plaintiff's duty at common law to stop his car before crossing the track of the Depot Company, and to exercise the highest degree of care to ascertain whether a train was approaching upon the railroad track before attempting to cross same. It was his duty to exercise the highest degree of care to protect and save from harm the passengers upon his cars. The exercise of the most ordinary care upon his part required that his cars should be brought to a stand still before crossing the depot track, which was in constant use,. and when he knew that trains were liable to be crossing at any moment. Plaintiff was guilty of the grossest contributory negligence in failing to stop his car, and in failing to discover the train of cars approaching upon the depot track and in failing to have his car under such control that he could stop and prevent the collision. Wills v. Railroad, 133 Mo. App. 625; Asphalt Co. v. Transit Co., 102 Mo. App. 469; Giardina v. Railroad, 185 Mo. 330; Hornstein v. Railroad, 195 Mo. 440; Deane v. Transit Co., 192 Mo. 575; Brockschmidt v. Railroad, 205 Mo. 446; Moore v. Railroad, 176 Mo. 528; Cole v. Railroad, 121 Mo. App. 605; Hebler v. Railroad, 132 Mo. App. 551; Gabriel v. Railroad, 130 Mo. App. 651; Waddell v. Railroad, 113 Mo. App. 680; Murphy v. Railroad, 153 Mo. 252; Bensiek v. Transit Co., 125 Mo. App. 121; Boring v. Railroad, 194 Mo. 154; Holland v. Railroad, 210 Mo. 338; Gettys v. Transit Co., 103 Mo. App. 564; Mockowik v. Railroad, 196 Mo. 550; Kelsay v. Railroad, 129 Mo. 362; Hayden v. Railroad, 124 Mo. 566; Stotler v. Railroad, 204 Mo. 619; Laun v. Railroad, 216 Mo. 563; Schmidt v. Railroad, 191 Mo. 215; Booth on Street Railways, sec. 301; Elliott on Railroads (2 Ed.), secs. 1096 and 1178; Railroad v. Boyer, 97 Pa. St. 91; Railroad v. Railroad, 149 Pa. St. 1; Railroad v. Railroad, 60 N. J. L. 52; Railroad v. Owen, 132 Ala. 420; Rich-

mond v. Railroad, 87 Mich. 374; Railroad v. Hickey, 166 U. S. 521; Railroad v. Browning, 34 Ind. App. 90. (c) Plaintiff's petition did not state a case under the humanitarian rule. This doctrine is bottomed upon, and presupposes contributory negligence upon the part of plaintiff. In order to take advantage of that rule, a plaintiff must state a case consistent with the existence of contributory negligence upon his part. Nivert v. Railroad, 232 Mo. 626; Krehmyer v. Transit Co., 220 Mo. 639; Matz v. Railroad, 217 Mo. 275; Bensiek v. Transit Co., 125 Mo. App. 127; Ross v. Railroad, 132 Mo. App. 472; Parrish v. Railroad, 140 Mo. App. 700. (d) Even had plaintiff's petition stated a cause of action under the humanitarian rule, the facts in the case did not justify a recovery by plaintiff upon that theory. The evidence does not show conclusively that any employee of the defendant company was upon the Santa Fe train as it backed out over the Union Depot tracks. All of plaintiff's witnesses, with the exception of one (Waller), testified that there was no one upon the rear end of the Santa Fe train. The witness Waller testified that there was a Terminal employee upon the rear end of the train, but that he jumped from the platform of the rear car at least thirty feet east of the fence on the east side of Sixth street. One or two witnesses for the defense stated that a Terminal employee was upon the rear end of the Santa Fe train, but that he jumped from the platform on the east side of the sidewalk on Sixth street. It was not contended that the engineer and fireman in charge of the train were employees or agents of the defendant company. If there was any agent or employee of the defendant company upon the Santa Fe train it was the person who was upon the rear end of the train, if such person was in fact there, and under all the evidence such person jumped from the train and was not in a position where he could have used any appliance upon the train to stop the same after he knew, or by the exer-

cise of ordinary care, could have known that plaintiff was in a position of peril. Such employee had the right to assume that plaintiff would obey the law and would stop his cars before passing over the Union Depot tracks. He had the right to assume that plaintiff would so operate his cars that he could stop them and prevent a collision, and after it became apparent that plaintiff did not intend to stop or could not stop, no employee of the Terminal Company was upon the Santa Fe train where he could use any appliance to stop the same and prevent a collision. Under such circumstances there was no obligation upon the part of the employees in charge of the Santa Fe train to take any precautions to avoid injuring plaintiff until they knew he would not or could not stop his cars, and when this fact became apparent, it was too late to stop and avoid the accident. Sissel v. Railroad, 214 Mo. 515; Evans v. Railroad, 176 Mo. 508; Van Dyke v. Railroad, 230 Mo. 259; Brockschmidt v. Railroad, 205 Mo. 435; Davies v. Railroad, 159 Mo. 1. (e) Aside from all this, plaintiff's acts which resulted in his injuries, were reckless and wanton. The statute law of the State and the ordinance of the city required him to stop his cars at least ten feet south of the Union Depot tracks. His cars were filled with passengers, and at common law he was required to stop his cars before passing over the railroad tracks. He was required to exercise the highest degree of care to obey the law and to prevent injury to his passengers. He knew the law and recklessly and wantonly disregarded it. He testified that he knew he should exercise and was required to exercise the highest degree of care for the protection of his passengers. He testified that he could have stopped his cars before passing over the railway tracks if he had intended so to do, but that he did not intend to stop them; that he could have had his cars under such control that he could have stopped when and where he pleased, but that he did not have them under such con-

trol. The evidence all shows that his view was absolutely unobstructed, and that had he looked he could have seen the approaching Santa Fe train. He testified that he did not look at the time and place when and where he should have looked, but that he was looking to the west; he did not see the Santa Fe train until he was so close to it that he could not stop his cars and prevent the accident. Under all the evidence his own reckless and wanton conduct contributed directly to the injuries sustained by him, if indeed such conduct was not the sole cause of such injuries. Where one is guilty of reckless and wanton conduct which contributes directly to the injuries sustained by him, he cannot avail himself of the humanitarian doctrine. Holwerson v. Railroad, 157 Mo. 216; Moore v. Railroad, 176 Mo. 528; Williamson v. Railroad, 139 Mo. App. 481.

*James W. Boyd* and *James Moran* for respondent.

It was not error on the part of the circuit court to refuse to give the appellant's instruction 1, asking the court to instruct the jury that under the pleadings and evidence the verdict must be for the defendant. This demurrer to the evidence was properly overruled. (a) It is the contention of the respondent that the evidence not only does not show that the plaintiff at the time he was injured was guilty of negligence, but it shows that he was not guilty of any negligence at all. He could not stop before reaching the Rock Island track without leaving his cars, which contained passengers, standing across the Grand Island or Terminal track, and when he passed over the Rock Island track, he could not stop before reaching the Burlington track, without leaving his cars standing on both the Grand Island and Rock Island tracks. When he passed the Burlington track, having a train of street cars (measuring the cars from tip to tip, and

including the distance between the motor car and the trailer, a street car train of the length of about 81½ feet), he could not stop that train of street cars ten or twenty feet south of the Union Depot track, without leaving the rear end of his train on the Burlington track, or so close thereto as to be in danger should a locomotive train pass over that track. However, by the time that the rear end of the street car train was passing over the Burlington track, the plaintiff as motorneer, began to make arrangements to stop the street car train before arriving at the Union Depot track. During that time, he had to make many observations. The Burlington train coming up north on Fifth street from the southwest, was due to pass in on the Union Depot track to the Union Depot. The motorneer saw some one looking in that direction, and necessarily was required, himself, to watch somewhat for that train. He watched in every direction; but until he was within thirty-five or forty feet of the Union Depot track, he did not and could not see the train which was about to back out of the Union Station, along the Union Depot track, in a diagonal direction across the street car tracks. As soon as he was far enough north to see past the flagman's house and the telephone post, he discovered the Santa Fe train in charge of the Terminal Company, coming out from the Union Station, towards Sixth Street; and he then, and even before that time, reversed the current, put on the brakes, and did everything in his power to stop his cars. The fact that he acted carefully when he passed over the Burlington track and before he reached the Union Depot track, and that he did all that was possible for him to do to stop the street cars, is testified to by a number of witnesses on the part of the plaintiff, and two or three witnesses on the part of the defendant. His efforts, however, to stop the street cars before the front end of the front car reached the Union Depot track, were not successful, for some

reason; although he did everything which a motorneer could do to stop his cars, he could not do so until the front end of his front car reached the Union Depot track. There is no scintilla of evidence in the case that he was not absolutely careful, in the highest degree, or that he did not use the highest degree of diligence to stop his cars, except the fact that the front end of the front car could not be stopped before it reached or got in close proximity to the Union Depot track. (b) The appellant contends that its demurrer to the evidence should be sustained on account of the provisions in sec. 3303, R. S. 1909. If that statute has any application to the city of St. Joseph, it cannot have any application to this case, because the four railroad tracks were not only considered and used by the street car company as one crossing, but the street car company necessarily, in view of the distances between the tracks, the length of its cars, and the surrounding circumstances, was compelled to regard said four railroad tracks as one crossing. It would be impossible to stop the street car train, consisting of two or three cars, ten or twenty feet before arriving at the railroad track in approaching any one of said tracks, without leaving the rear end of said street car train standing upon one or more of said tracks. The law does not contemplate that the street car company, in approaching a railroad track so close to another track, that it should stop from ten to twenty feet before reaching it, if thereby it should leave its cars and passengers standing across other railroad tracks. In other words, the Legislature did not intend to require the street car company, in its effort to avoid a possible danger in one direction, to rush into a position ten-fold more dangerous, in another direction. (c) While it may have been the duty of the plaintiff and the conductor of the street car train to use the highest degree of care for the protection of the passengers of said street cars, yet it is a fact that the plaintiff did not owe to the

defendant, its conductor and pilot, and others, on the backing train, any higher degree of care than defendant's conductor and pilot on said backing train owed to him. (d) Under the facts and circumstances in this case, the plaintiff contends that he was not guilty of any negligence whatsoever on the occasion when he was injured. He further contends that if, under the pleadings and evidence in this case, it might be inferred that he was not in the full discharge of his duty, still, under the humanity rule, or the law of this State as it has been announced and re-announced in this court for many years, he is still entitled to a verdict if the defendant in the exercise of reasonable care or caution, either saw or might or would have seen that the plaintiff could not stop the street cars before arriving at the Union Depot track, or that he was in imminent peril, and that then the defendant failed to use the appliances at its command to check the speed of the said steam railroad train or to stop it, and negligently failed to do any thing in that respect, and on account thereof the said railroad train ran into the street cars. Then the plaintiff is entitled to a verdict in this case. Ellis v. Railroad, 234 Mo. 657; Nivert v. Railroad, 232 Mo. 626; Murphy v. Railroad, 228 Mo. 56; Krehmeyer v. Transit Co., 220 Mo. 639. (e) Much is said in reference to the statute, which reads: "Sec. 3303. It shall be the duty of every street railway company or corporation operating a street railway across the tracks of a railroad company, to bring its cars to a full stop at least ten, and not more than twenty feet, before reaching the tracks of the railroad company. And it shall be the duty of the conductor, or some other employee of the street railway company, to go forward to the tracks of such railroad company for the purpose of ascertaining whether a train is approaching such crossing." It will thus be seen that the statute did not make it the duty of respondent herein, only a motorneer for said company, to bring said

street cars to a full stop, or any stop, before reaching the Union Depot track, where the accident happened. Maupin was the conductor of the street cars upon which the respondent was acting as motorneer or mortorman. The respondent had no control at all over the management of the street car or street cars; but was simply a motorneer running thereon, obeying the orders of the street car company, given to him through the street car company itself, which spoke through the conductor, who was at said time, for all purposes of this case, the street car company itself. The conductor was on that occasion the "street railway company," or its *alter ego*. Miller v. Railroad, 109 Mo. 250. The said section of the statute further provides that: "It shall be the duty of the conductor, or some other employee of the street railway company, to go forward to the tracks of such railroad company." This sentence in the said section means, that if there was a conductor on the street car train it would be and was his duty to go forward. It cannot hardly be said to mean that the motorneer should get down and go forward, if there was a conductor there who had charge of the car at that time. Hence, it will be seen that Clark was not guilty of any negligence in this regard, especially as the witnesses on both sides testified that he did all he could do, under the circumstances of the situation. He moved the cars forward by order of the street railway company given through its conductor.

GRAVES, J.—Plaintiff sued the St. Joseph Terminal Railroad Company and the St. Joseph Union Depot Company in the circuit court of Buchanan county, to recover compensation for injuries alleged to have been sustained by him because of the negligence of said companies. At the conclusion of the evidence introduced at the trial, plaintiff took a nonsuit as to the Union Depot Company. Verdict was returned in the

sum of $11,400 against the Terminal Railroad Company and judgment rendered in that amount, from which judgment said Terminal Railroad Company appeals to this court.

Plaintiff was, on the 28th day of September, 1901, in the employ of the St. Joseph Light, Railway, Heat and Power Company as a motorman, and as such was in charge of one of said company's trains of street cars, then being operated over Sixth street in the city of St. Joseph. There were two street car tracks running north and south along Sixth street. Cars running north ran over the east street car track, and cars running south ran over the west track. Just north of Monterey street, which crosses Sixth street, four railway tracks cross Sixth street in close proximity to each other. The first railway track north of Monterey street belonged to the St. Joseph Terminal Railroad Company; the second track belonged to the Chicago, Rock Island and Pacific Railroad Company; the third track belonged to the Chicago, Burlington and Quincy Railroad Company, and the fourth or north track belonged to the St. Joseph Union Depot Company. A plat or blue print map of this portion of Sixth street was introduced in evidence by plaintiff, and by it the distance between the Terminal Railroad Company track and the Rock Island track is shown to be a little more than twelve feet; the distance between the Rock Island track and the Burlington track is a little more than forty feet, and the distance between the Burlington track and the Union Depot Company track is a little more than 105 feet, such distances being measured along the east rail of the east street car track. The Union Depot Company track crosses the street diagonally in a direction from northeast to southwest. While the distance from the Burlington track to the Union Depot Company track measured along the east rail of the east street car track is a little over 105 feet, the distance along the west rail of the east street car track is

only a little over ninety-nine feet. Plaintiff claims these distances to be a fraction less than those shown by the plat, a matter to be fully noted in the opinion.

From the street car tracks the Union Depot Company track curves into a northerly direction to its terminus at the Union Depot building, a few hundred feet north and situated on the east side of Sixth street. There was situated on the east side of Sixth street and between the Union Depot Company track and the Burlington track a watchman's or flagman's house. This house was thirty or thirty-five feet southeast of the point where the east rail of the east street car and the south rail of the Union Depot Company track crossed, as appears from the plat in evidence. Plaintiff's "Exhibit C" and defendants' "Exhibit B," two photographs evidently taken from a different viewpoint, tend to illustrate this situation, and for that reason are here inserted.

"PLAINTIFF'S EXHIBIT 5"

"DEFFENDANT'S EXHIBIT B."

A visual examination of the plat heretofore m e n t i o n e d serves *more clearly to fix the location and surroundings heretofore described, and for that reason said plat is also set out.

Clark v. Railroad.

On the date above mentioned, plaintiff was acting as the motorman of one of the cars of the St. Joseph Railway, Light, Heat and Power Company, operating over the Sixth street tracks. He was standing on the front platform of a car which was the usual and customary place for the motormen to stand in the performance of their duties. Attached behind this car was a second car, called a trailer. These cars were being propelled north across Sixth street and on the east track. When they came within a few feet of the Terminal Railroad Company track, the first one to cross when going north, plaintiff stopped the cars. At that time a switch engine and a number of freight cars were passing along Sixth street on said Terminal Railroad Company track. As soon as the engine and cars had passed, the plaintiff started his cars and crossed the first three tracks. Plaintiff testified that after crossing the third, or Burlington track, he looked northeast to see if a Burlington train was approaching.

A few minutes before this, a Santa Fe passenger train, consisting of two passenger cars, a baggage car and an engine, had arrived at the Union Depot. The passengers had disembarked and the baggage had been unloaded, and the train crew, with the exception of the engineer and fireman, had left the train. This train came into the Union Depot at about this time every day, such depot being the end of its run from North Lexington, Missouri. After the passengers had disembarked and the baggage had been unloaded, the train was backed out of the said Union Depot over the Union Depot Company track heretofore mentioned over and across Sixth street and across the street car tracks mentioned and over other tracks and streets to the Terminal yards. The evidence shows that it was the customary practice for an employee of the Terminal Railroad Company, called a hostler or pilot, to take up a position upon the rear platform of the rear

coach and while said train was backing out of the Union Station and over such tracks to the terminal yards to assist in the management of said train by signalling to the engineer and fireman and by applying the air brake and sounding an air whistle on said rear platform.

On the date above, this train was being backed along this track as usual. The evidence is conflicting as to whether the hostler or pilot was on the rear coach. At the point where the street car tracks and the Union Depot Company tracks crossed, the rear coach and the street car which plaintiff controlled as motorman collided with great force. The street car was thrown off the tracks and slewed around to a position nearly parallel with the railway coach.

By the shock and force of the collision, plaintiff was thrown onto the platform of the street car and wedged between the street car, and passenger coach in such manner that he was seriously and greatly injured.

The petition is exceedingly verbose, but after pleading some ordinances of the city (alleged to have been violated by defendant) and the general duties of the defendant to plaintiff, we find a paragraph of the petition which fairly reiterates the divers charges of negligence. This paragraph reads:

"Plaintiff further states that said collision so had as aforesaid, between said train of cars being so backed out of said Union Station as aforesaid, and the street car upon which plaintiff was a motorneer at said time and place aforesaid, in consequence of which the plaintiff received the injuries complained of as aforesaid, was caused and occasioned by the carelessness and negligence of said defendants in carelessly and negligently running said train of cars at a greater rate of speed than five miles per hour, and failing to ring a bell upon the engine of said train of cars moving as aforesaid, and carelessly and negligently fail-

ing to have a man upon the rear end of the car to pilot the same out from said Union Depot across said Sixth street; and failing and neglecting to have a suitable air brake or emergency brake, or any other safe appliance on said train of cars by which the same could be stopped within a reasonable time; and by carelessly and negligently failing to stop said backing train before reaching said Sixth street as aforesaid; and by the carelessness and negligence of the defendants, their agents and employees in charge of said train, in failing to give any warning or notice whatever of the approach of said backing train towards and over said Sixth street by ringing a bell or otherwise, and by the carelessness and negligence of defendants in failing to have and keep a capable watchman, or other person at said crossing to give warning or notice to the employees of said car company, and especially to plaintiff, of the approach of said backing train of cars as aforesaid, towards and over said crossing, and by the carelessness and negligence of defendants, its agents and employees, to have discovered the danger in which plaintiff was placed and failing and neglecting to apply the air brakes or other brakes on said car to protect plaintiff from the danger in which defendants by their agents and employees had placed him by their carelessness and negligence after they did learn of such danger, or could have learned of such danger, by due care and caution.''

Defendant answered by way of general denial and a plea of contributory negligence. The plea of contributory negligence set forth an ordinance of the city and a state statute alleged to have been unobserved by plaintiff at the time of his injury. Other details as to both pleadings and evidence can best be noted in connection with the points made.

I. We are confronted with a preliminary question in this case, the details of which we have purpose-

ly omitted from our statement, for the reason that they can best be stated here. The cause was tried and plaintiff had judgment for $11,400 on February 13th, 1908. On March 10, 1908, the following paper was filed in the cause in the Buchanan Circuit Court:

State of Missouri, } ss.
County of Buchanan. } ss.

R. A. Brown, being first duly sworn upon his oath, says that he is the attorney and agent of the above named defendant, St. Joseph Terminal Railroad Company, and as such is duly authorized to make this affidavit; that the appeal prayed for by the said defendant, St. Joseph Terminal Railroad Company, is not made for vexation or delay, but because this affiant considers said defendant, St. Joseph Terminal Railroad Company, and said defendant considers itself, aggrieved by the judgment and decision of the court herein.

On the same day the following record entry was made by said court:

Subscribed and sworn to before me this 9th day of March, 1908.                                                    R. A. Brown.

(Buchanan Circuit Court)
(Seal)
(Missouri)
No. 16763.

Harry B. Clark, Plaintiff,
          v.
St. Joseph Terminal Railroad Company et al., Defendants.
          Affidavit for Appeal.
     Filed March 10, 1908.                    Ambrose Patton,
                                                    Circuit Clerk.

     By J. C. Lund,
          Deputy Clerk.
Harry B. Clark                    No. 16763.
          v.
St. Joseph Terminal Railroad Company et al.

Now here defendant, St. Joseph Terminal Railroad Company, has leave to file bill of exceptions herein during the next regular term of this court.

Comes now the said defendant, and by its attorney files affidavit for appeal, and now here in open court said defendant deposits with the clerk the sum of ten dollars as docket fee for appeal. Now here the amount of the appeal bond is fixed at twenty five thousand dollars, said bond to be filed and approved by the clerk of this court within ten days after final adjournment thereof for this term.

And now here appeal is allowed said defendant to the Supreme Court of the State.

In 1911 it was discovered that the name of the officer before whom the affidavit was made was missing, and the defendant fied in the circuit court its application for certain *nunc pro tunc* entries. At the time the paper was filed, Ambrose Patton was circuit clerk, and C. J. Lund, his deputy. Judge Henry M. Ramey was the presiding judge. In the meantime death had taken both the judge and the deputy clerk, and the clerk himself had gone out of office.

Upon a hearing of the matter, Judge Amick, successor to Judge Ramey, by order duly made, directed that the words ''Ambrose Patton, Circuit Clerk, by C. J. Lund, Deputy Clerk,'' be attached to said affidavit by Ambrose Patton, and further ordered and directed that the record entries of March 10th, supra, be amended by adding the following words therein: ''Said affidavit having been sworn to before C. J. Lund, deputy clerk of this court,'' so that clause of the record, when so amended, read:

''Comes now the said defendant, by its attorneys and files affidavit for appeal, *said affidavit having been sworn to before C. J. Lund, deputy clerk of this court.*''

In the hearing of this application the court records and files were introduced, and in addition, R. A. Brown, attorney for defendant, was permitted to testify that he in fact swore to the affidavit before C. J. Lund, deputy clerk. This evidence was objected to, and upon the termination of the inquiry resulting in the judgment aforesaid thus amending the records, the plaintiff appealed.

Plaintiff challenges the right of the circuit court to thus amend its record, and has filed in this court motion to dismiss the appeal, on the ground that there is no affidavit of appeal.

This motion we think should be overruled. Practically the same question was up in Cooley v. Railroad, 149 Mo. 487. The only difference between the af-

fidavit for the appeal in that case and the one at bar being that in the Cooley case the seal of the clerk was not affixed, and in this case it was affixed. On the facts the case at bar is the stronger of the two. The Cooley case, wherein the defective affidavit was filed, went to the Kansas City Court of Appeals, and was there reversed and remanded. When it got back to the circuit court a motion was filed to dismiss the case upon the ground that the Kansas City Court of Appeals acquired no jurisdiction owing to the absence of an affidavit for appeal, and its judgment remanding the cause was void for want of jurisdiction. With this question lodged in the case, it went to the Kansas City Court of Appeals a second time, and after an opinion was written, the cause was certified to this court. We adopted *in toto* the opinion of SMITH, J., and made it our own. [149 Mo. l. c. 491.] Discussing the defective affidavit we there said:

"After the cause had been remanded to the latter court, the defendant moved to dismiss the same for the reason that no affidavit for an appeal had been filed by the plaintiff and therefore the appeal granted was unauthorized by law, and did not confer jurisdiction upon this court to render said judgment of reversal. *To the affidavit upon which the appeal was granted, there was no jurat appended. The circuit court, after hearing evidence as to whether or not the plaintiff's attorney, by whom the affidavit was signed, had made oath thereto before the clerk, overruled the defendant's said motion to dismiss and permitted the clerk to attach the proper jurat to the affidavit. The order granting the appeal was regular on its face, and our attention was at no time called to the defect in the affidavit, either by motion or otherwise.*

"Section 2114, Revised Statutes 1889, expressly provides that the omissions, imperfections, defects and variances mentioned in the preceding section (2113) and others of like nature, not being against the right

and justice of the matter of the suit, and not altering
the issues between the parties on the trial, shall be
supplied and amended by the court when the judg-
ment shall be given, or by the court into which such
judgment shall be removed by writ of error, or appeal.
*No reason is therefore seen why the omitted jurat
could not have been supplied by leave of either this or
the circuit court,* even after the judgment of reversal
was given by the court. [Bergesch v. Keevil, 19 Mo.
127; Crum v. Elliston, 33 Mo. App. 591.]''

We have since followed the Cooley case in State
ex rel. v. Broaddus, 210 Mo. l. c. 14, whereat we said:
''In Cooley v. Railroad, 149 Mo. 487, it was held that
under section 2114, Revised Statutes 1889 (Sec. 673,
R. S. 1899), a jurat omitted from the affidavit upon
which the appeal is granted may be supplied by leave
of either the appellate or the trial court, upon a show-
ing that the affidavit had been properly signed and
sworn to.''

The proceedings had in this cause seem to be in
conformity with these views. The motion to dismiss
is therefore overruled.

II. The first vital question urged goes to the
petition. Defendant contends that under the petition
there can be no recovery under the so-called humani-
tarian doctrine, and as that question permeates the
whole case, this contention had best be settled even be-
fore we discuss the demurrer to the evidence. A dis-
cussion of the demurrer to the evidence involves the
question.

In addition to what we have heretofore quoted
from the petition in our statement we find the follow-
ing:

''  .  .  . and carelessly and negligently failed
to apply or use an air brake or an emergency brake, or
any brake whatever on said backing train as aforesaid

or to use any means or appliances of any kind or character to stop said backing train after discovering there was danger of a collision at said Sixth street with said street car on which plaintiff was motorneer as aforesaid, or after the agents or employees of the defendants in charge of said moving train might or could, in the proper exercise of due care and vigilance, have discovered the danger of a collision between said backing train and said street car in time to have employed an air-brake, emergency brake, or other appliances to stop said train and avoid a collision between said train and said street car, but on the contrary defendants then and there carelessly and negligently and by reason of the various acts of negligence herein charged against them, ran said train upon and over said Sixth street, and collided with and with great force and violence struck the car upon which plaintiff was so employed as motorneer, and caused the injuries hereinafter complained of.''

Defendant's contention is based upon two phrases found in plaintiff's exceedingly lengthy and verbose petition. At one place this phrase is found: ''that while plaintiff was in the discharge of his duties *and in the exercise of due, reasonable and ordinary care* the defendants by their agents,'' etc.; and in another place this phrase: ''*and without any fault, carelessness or negligence on the part of the plaintiff* and then and there said train of cars so managed by defendants as aforesaid struck plaintiff,'' etc.

Defendant says that the use of these averments precludes the idea of negligence upon the part of plaintiff, and that the humanitarian rule presumes the previous negligence of the plaintiff. It is usually true that the humanitarian rule is only invoked in cases where the plaintiff has negligently placed himself in a position of peril. We mean by this that such are the cases in which we have been called upon to define and limit

the application of the humanitarian or last clear chance rule.

We will not digress in this case to discuss either the origin of the doctrine or its merits or demerits. The question we have here is a pure question of pleading. In this case, as in all others of like character, the plaintiff is suing to recover for injuries, alleged' to have been received through the negligent acts of defendant. Those negligent acts are severable into two classes, (1) acts which are charged to have been the cause of the injury, although plaintiff was himself not negligent, and (2) negligently failing to stop the train after plaintiff was in a position of peril, whether his perilous position was occasioned by his negligence or not. Of course, the position of peril must be known to the defendant, or it must be shown that the defendant could have known of it in time to have averted the injury, if defendant had been in the exercise of reasonable care and prudence. But this last is beside the question before us. The petition in this case should be perhaps declared to be in one count, although that is not certain. Such we take to be its reasonable construction and what we have to say will be upon that theory. Upon that theory does the use of these phrases quoted supra preclude the application of the so-called humanitarian rule? We think not. The basis of the action is negligence. Negligence may grow out of divers acts. Some of these divers acts may constitute what the books denominate common law negligence, and some of them may make up what we call statutory negligence. After all it is negligence and negligent acts with which we are dealing. A number of negligent acts may go towards producing the same injury. Some may be statutory and some common law acts of negligence, but in the end we have only negligence. We are not convinced that this court has ever announced that different acts of negligence could not be charged in the single count of a petition. This has been

continuously done in cases where there are acts of common law and acts of statutory or ordinary negligence. Several acts of negligence of the same general nature, all of which may be true, and either of which or all which may have caused the accident or injury may be placed in one count of a petition. [Haley v. Railroad, 197 Mo. 1. c. 23; Wacher v. Transit Co., 108 Mo. App. 645; Holdon v. Railroad, 108 Mo. App. 665; White v. Railroad, 202 Mo. 1. c. 560.]

If so then we can see no reason why the act of negligence which brings the case within the so-called humanitarian rule, may not be alleged with other acts of negligence in the one count of the petition. The act of negligence authorizing a recovery under the humanitarian rule is one done after the plaintiff has placed himself in a position of peril, but it is none the less negligence and an act of negligence within the law as such is announced by the humanitarian rule.

Defendant in the brief says: "Plaintiff's petition did not state a case under the humanitarian rule. This doctrine is bottomed upon, and presupposes contributory negligence upon the part of the plaintiff. In order to take advantage of that rule, a plaintiff must state a case consistent with the existence of contributory negligence upon his part."

Reliance is placed upon the case of Nivert v. Railroad, 232 Mo. 626. Upon the question of pleading the opinion of Woodson, P. J., in the Nivert case, is not an opinion of the court. There were only three judges sitting and upon this question two of them dissented from the views of the presiding judge. Nor is the Krehmeyer case, 220 Mo. 639, an authority. In that case, at page 672, it is indicated that four judges concur, thus leaving an opinion upon the question, but this is error. On page 673, begins the separate opinion of the present writer, in which a special concurrence in the result is shown, and for reasons other than the question of pleading discussed in the prin-

cipal opinion. Thus it will be seen that there is no opinion made in that case upon the question here presented, and discussed in those two cases.

In Haley v. Railroad, supra, we said: "Several acts of negligence of the same nature, and all of which may be true and either of which or all of which together may have caused the accident, may be pleaded in one count." In that case the negligence calling for the invocation of the humanitarian rule was pleaded, as well as other acts of negligence.

But after all the cause of action is to recover for negligence. This negligence may be made up of many distinct acts of negligence, and the plaintiff can plead all of the negligent acts, and recover upon either one which may be established by the evidence.

In the Wacher case, supra, there were five distinct acts of negligence relied upon for recovery, thus:

"1. In negligently managing the car.

"2. In failing to keep watch for vehicles on the track in front of said car.

"3. In failing to sound the bell, or in any other manner warning the plaintiff of the car's approach.

"4. In failing to stop the car after the danger of striking plaintiff's wagon became apparent, or by the exercise of ordinary care would have become apparent.

"5. By running the car at a high and dangerous rate of speed."

It will be noted that the fourth counts upon the humanitarian rule. In the course of the opinion the court said: "The plaintiff's right of action was single and not collective of several distinct or separate causes of action and was properly pleaded in one count."

In the recent case of White v. Railroad, supra, after reviewing our own cases, we said:

"Furthermore, it will be found that, barring inconsistent and self-destructive averments, there have

been presented to this court in the last half century hundreds of cases in which common law negligence and negligence made so by statute (or by some by-law of a city) have been pleaded in the same count and recovery has been allowed on proof of all or one or more of these specifications; and we cannot see why the different elements which blend together to produce the injury (so long as there is no discord between them) may not be so pleaded. The uniform practice has been to so plead them; no injury results therefrom to defendant that we can see; and there is no more confusion in blending them in one count than would come in setting out each specification of negligence in a separate count.

"It may be said, then, that whether the negligence complained of arises from the violation of a common law duty, or a statutory duty, or an ordinance duty, is of no significance (that is, the mere *origin* of the duty violated is of no significance) so long as the violated duties produce the one injury and the one damage constituting the subject-matter of the suit. There was no error in overruling the motion because it commingled ordinance and common law negligence."

Such too is the reason of the situation. When you plead facts such as will invoke the humanitarian rule, you but plead an act of negligence. Acts of negligence not inconsistent with each other may be pleaded in a single count. We are not of opinion that the facts pleaded as to such acts as invoked the humanitarian rule in this case are inconsistent with the other acts of negligence. The petition, whilst not as specific and direct as it might be upon the humanitarian rule, is broad enough and definite enough to permit a recovery upon that theory. In discussing the demurrer to the evidence, we shall therefore discuss it upon the theory that the humanitarian doctrine is in the case under the pleadings.

III.  Should the demurrer to the evidence have been sustained? We think not for reasons to be assigned. We must concede the negligence of the plaintiff, for such is the proof. The track upon which he was injured was the north one of the four tracks. A fair consideration of the evidence forces us to say that there was ample space for the plaintiff to have stopped his train of two street cars, in safety, between the third and fourth railroad tracks. The statute of this State compels street railways to stop their cars not less than ten or more than twenty feet from a railroad crossing. This statute cannot be repealed by the customary violation thereof. Plaintiff's evidence shows that for a long time it had been the custom to stop the street cars upon the approach of the first track on the south and then to start up and run across all four (as if one track) without stopping. This custom can not change the statute, nor can it excuse the plaintiff from the negligence *per se* arising from the violation of the statute. So that we repeat that we must proceed upon the theory that plaintiff himself was negligent.

There is evidence likewise showing the negligence of the defendant. The backing train was being run in excess of five miles per hour, the rate fixed by ordinance, as indicated by evidence for the plaintiff. According to the plaintiff's side of the case the flagman failed of his duty; no bell was rung in violation of ordinance; no man was upon the lookout upon the rear of the train, etc. In other words, ample acts of negligence upon the part of the defendant are made to appear. Shortly stated the facts are these. Plaintiff stopped his street cars (two in number in one train) upon reaching the south track and before crossing it; upon signal from his conductor, he started up with the intention of not stopping until he had crossed the four tracks. Plaintiff says he saw this backing train, when he, plaintiff, was thirty feet from the crossing;

that he at once undertook to stop his train of street cars, and did everything he could to stop them; that he was going at only three miles an hour. Plaintiff thus describes his acts after passing the Burlington track:

"Q. Just state to the court what you were doing after you got past the Burlington track? A. When I crossed over the Burlington track I was watching to the northeast up on the curve where trains back out from the depot and saw no train, and then looked up the street as I was going on, glancing in different directions, and a man standing at a switch target to the west of Sixth street looking to the southwest attracted my attention by reason that the Burlington passenger train from Kansas City was already then past due, and thinking that it was then coming and I would be in danger from that direction I bent over and took a look for it in a southwest direction.

"Q. Was that the direction from which the Burlington train came? A. Yes, sir, and as I turned around and straightened up, looking the other way again—

"Q. What do you mean by 'looking the other way'? A. Straight north, up the street ahead of me, and turning my glance again past the shanty I saw this train.

"The Court: Where were you when you saw the train?

"The Witness: Somewhere within about thirty feet.

"Q. From what? A. From the cross-rail.

"Q. The crossing of this curved track? A. Yes, sir, and at the same time I hollered to jump, and made every effort on earth to stop my car.

"Q. Did you jump? A. No, sir; I stayed on my car, in order to save the lives of the passengers behind me.

"Q. State what effort you did make to stop the car when you first discovered, on looking in that direction, this Santa Fe train was approaching you? A. Throwed the current off, applied the brake and checked the speed of the car, and also started to reverse it; before anything else could be done I was struck.

"Q. Do you remember what part of your car was struck by the Santa .Fe train? A. Struck my car right on the northeast corner.

"Q. What part of the Santa Fe train struck the northeast corner of your car? A. The back end of the step."

Others testify that an attempt was made to stop the street cars about the time mentioned by plaintiff, but their statements do not fully accord with that of plaintiff as to the speed he was going. Plaintiff also says that he saw the backing train when it was 125 feet from the crossing. Witnesses place the rate of its speed at from eight to ten miles per hour. Other evidence would indicate that after passing the little lookout house (a small eight by ten structure) he could have practically seen to the Union Depot. Still other evidence tends to show that the only obstruction to his view of this train from a long distance south of the "dog house" or lookout house, was two or three telephone poles and this small structure. So that when all the evidence is viewed, it is quite clear that plaintiff was not only guilty of negligence in not stopping his train according to the statutory edict, but that he was likewise guilty of actual negligence in not sooner seeing the backing train. Not only so, but we take it with a grain of doubt, when he says that he could not stop these streets cars running only from two to three miles per hour in a distance of the thirty feet which he had to go. Either he was going much faster, or he made no prompt attempt to stop, is the only reasonable conclusion. There is no hint that his appliances were not in order. To say that a street car running

only three miles per hour could not be stopped in much less than thirty feet, is asking this court to discard its common sense, as well as the common knowledge which we all possess. It would in all cases be better for plaintiffs to bare the real facts to the scrutiny of the court. This we feel that plaintiff has not done in this case. We conclude that the plaintiff was guilty of both statutory and actual negligence.

But does this conclusion bar his recovery? Under other facts in this case, we think not. It is further shown that the defendant always placed a man in charge of these backing trains. That this man's position was on the rear of the train, or the front end of the backing cars. That the backing train ran under this man's directions. That from his position he signaled the engineer to start and to stop. That on this rear car, or front car as it backed, was an arrangement by which the air could be applied and the train stopped. That it was the duty of the man in charge of the train not only to signal the engineer to stop, but in case of necessity to apply the air. A witness for the plaintiff, one Waller, who was fireman on the backing train, says that their train was going about eight miles per hour, and that by the application of the air it could have been stopped within a distance of four or five feet; that when the collision occurred, the impact released the air and the train in fact stopped within that distance. This witness also says that defendant's agent, William Ferrington, was in charge of this backing train at the time; that he jumped from the train when thirty or more feet east of the east line of Sixth street; that had he applied the air, which could have been done as quickly as the snapping of the fingers, the train could have easily been stopped before passing the east curb line of the street; that Ferrington jumped from the car without either signalling the engineer or applying the air.

Under these facts should the case have gone to the jury on the humanitarian rule? We think so. We have here a place where the law imposes the duty of being on the lookout. We have here a place where what might have been seen by the exercise of ordinary care, is, in law, actually seen. Had Ferrington remained on the car the perilous position of plaintiff would have been obvious, if in fact it was not obvious when he suddenly left the car without doing a thing to prevent the accident. Some evidence would indicate that seeing an impending collision he left the rear car. Unfortunately Ferrington was dead and his version is not before us. But under the evidence before us he left his car, when it was fifty to sixty feet from the street car crossing, and without applying the air or doing anything else to obviate a collision. This too, when the evidence tends to show that his train, by the application of the air, could have been stopped within four or five feet. Now grant it to be true that plaintiff was guilty of gross negligence, and by such had placed himself in a perilous position, this does not relieve the defendant, if by the exercise of ordinary care it could have seen his position of peril in time to have averted the injury. We say "could have seen" rather than "did see," because this was a place where defendant had no right to expect a clear track, and was in duty bound to be on the lookout. Under these facts we conclude there was no error in overruling the demurrer to the evidence on the theory that the humanitarian rule applies in this case, and we think that it does.

IV. Plaintiff instructions are the objects of vigorous assaults.

Plaintiff's instruction No. 3 thus reads:

"The court instructs the jury that if they believe from the evidence in this case that the plaintiff used reasonable care and diligence in moving the street

cars north on Sixth street on the occasion of the collision, and that he exercised reasonable care and diligence in keeping a lookout in different directions, so as to avoid or endeavor to avoid any danger, and that after passing over the Burlington railroad track, that is, the track which the evidence tends to show was next south of the track upon which the collision occurred, when he was thirty or forty feet or more south of the track upon which the collision occurred, he made every reasonable effort to stop his said street cars before they reached the track upon which the collision occurred and could not do so, and that notwithstanding his efforts in that behalf the collision did occur, then the jury cannot find against the plaintiff on the ground of negligence or contributory negligence in not stopping his car.''

This instruction is error. Plaintiff says his two cars were about forty feet each in length. And the couplings between them were about three feet, or his train about eighty-three feet. Other evidence makes them less. He could have complied with the law and the ordinance which required him to stop before attempting to cross this last track. The law said for him to stop. It did not say for him to use ordinary care to stop. When the law commands a thing to be done, it means that the utmost care and diligence must be used to obey its mandates. Ordinary care and diligence was not the measure of the plaintiff's duty, and this declaration of law is not only erroneous, but misleading. It left the jury to excuse the plaintiff upon a showing of ordinary care, when the statute imperatively commanded him to stop, which command imposes the highest degree of care. This statute was passed to save the lives of passengers and must be construed in that light. Construed in that light it imposes more than ordinary care and diligence.

V. Plaintiff's instruction numbered 5 permitted a recovery for the plaintiff upon alleged negligent acts, other than the failure to protect plaintiff whilst in a perilous position, provided the jury found that plaintiff himself was guilty of no negligence. In other words, this instruction eliminates the humanitarian rule, and submits the questions of (1) negligence or no negligence upon the part of defendant, and (2) contributory or no contributory negligence upon the part of the plaintiff. The instruction is perhaps well enough, generally speaking, in a case where applicable. It would be applicable in this case, but for the reason that the court should have said, as a matter of law, that this plaintiff was guilty of negligence. This plaintiff should have started up and run his car with a view of stopping it before attempting to cross the railroad track, and this too in the absence of any apparent danger, because the law so says. Plaintiff says that he was not so running his car. He says he had no intention of stopping his car before crossing that track, until he saw this train. His duty was to have had his car under such control as would enable him to stop it in not less than ten feet of the railroad track, at which time he could make the proper observations as to when it was safe to proceed across. But beyond this the physical facts in this record show that plaintiff, had he looked, could have seen the backing train in ample time to have protected his car from the collision. He did see it thirty feet from the crossing, and under the physical facts could have seen it much further. There were no obstructions except this little "dog house" and one or two telephone poles for some distance south and east of this crossing. Neither of these would so obstruct a train of two coaches, a baggage car and a tender and engine, that it could not have been observed.

It is true that in this case plaintiff says he was on the lookout for trains, but this does not clear the

situation. MACFARLANE, J., in Kelsay v. Railroad, 129 Mo. l. c. 374, thus spoke for the court.

"But even conceding that she testified that she looked east for a train as soon as she had passed the obstruction, it is clear that the train was in plain view and within two hundred or three hundred feet of the crossing. One of two facts is true: Either the plaintiff did not look with that care common prudence required of her, or she did not look at all, until too late to avoid the collision.

"It was said in a recent case: 'It is simply and flatly impossible that one can stop, look, and listen for an approaching train that is in plain view and close at hand and be unable to see or hear it, if he possess the senses of sight and hearing. It seems, therefore, necessary to advance one step in the application of the doctrine of legal presumption, and to lay it down as a rule that one who is struck by a moving train which was plainly visible from the point he occupied when it became his duty to stop, look, and listen, must be conclusively presumed to have disregarded that rule of law and of common prudence, and to have gone negligently into an obvious danger. A line of well considered cases leads fairly up to this conclusion.' [Meyers v. Railway, 24 Atl. 747.]

" 'If a traveler, by looking, could have seen an approaching train in time to escape, it will be presumed, in case he is injured by collision, either that he did not look, or, if he did look, that he did not heed what he saw. Such conduct is held negligence *per se*.' [Beach, Cont. Neg. (2 Ed.), sec. 182.]

" 'It is in vain to say that he looked and listened, if, in despite of what his eyes and ears must have told him, he walked directly in front of a moving locomotive.' [Carroll v. Railroad, 12 Wkly. Notes Cas. 348; Marland v. Railroad, 16 Atl. 623.]

" 'A man may possibly think he sees an object, which has no existence in fact, but which it may be dif-

ficult, if not impossible, to prove did not exist or was not seen. But an object and power of sight being conceded, the one may not negative the other. In this case the plaintiff had good eyes; the train was approaching him in the night, with the engine's headlight burning brightly; if the plaintiff looked, he must have seen it, or he must have looked very negligently and carelessly —in either case, he was necessarily, in the eyes of the law, guilty of contributory negligence, precluding his right to recover.' [Artz v. Railroad, 34 Iowa, 153.]

" 'It was broad daylight, and when within five feet of the north rail of the track it is undisputed that the plaintiff could see two hundred and fifty feet east along the main track. No one disputes that if he had but looked he certainly would have seen the train. It is evident, therefore, that he did not look; or, if he did, he saw the train and carelessly attempted to cross in front of it, and in either case he was guilty of such negligence as to preclude a recovery. . . . If he had looked eastward, he would have seen the train before he stepped upon the track. . . . One look eastward, and one less step taken, he would not have been upon the track. Upon any theory of the case, it was the duty of the court to have directed the verdict in favor of the defendant.' [Gardner v. Railroad, 56 N. W. 603.]

"It was said in a recent case in this court, by the present chief justice: 'It will thus be seen that it was a physical impossibility for the deceased to have failed to see the approaching train, if he looked in that direction, as it was his duty to do, while yet in a place of safety, and before entering upon the line of danger. Had he done so, there can be no question that he could, and would, have stopped his team until the train passed, and then crossed over in safety. But for some unexplained reason he failed to do so. And thus it is, though the defendant may have been negligent in failing to give the signals for the crossing, and in permit-

ting the high grass to be upon its right of way, yet the deceased having lost his life through his own negligence in failing to discharge the duty imposed upon him by law, in his situation, the plaintiff cannot recover for his death.' [Hayden v. Railroad, 124 Mo. l. c. 573.]

"Plaintiff says her eyesight was good. A view of the track for a quarter of a mile was unobstructed from any point within twenty-five feet of the track. When the obstruction was passed the train was within three hundred feet of the crossing in plain view. It is in vain for plaintiff to say that she looked, with any degree of care, and did not see it. In any event we can but say that plaintiff was negligent and that her negligence contributed to her own injury. After a careful examination of all the evidence, and allowing every reasonable inference in favor of plaintiff, this conclusion is irresistible."

This case has ofttimes been followed by this court. Mrs. Kelsay testified that she did look for a train and could not see one, but this court said such testimony was in the very face of the physical facts, and we by our judgment of plain reversal declared her guilty of negligence. So in the case at bar the trial court should have declared as a matter of law that the plaintiff was guilty of negligence, and an instruction that submitted the question of his negligence to the jury was error.

Under the facts of this case the plaintiff has but one chance for recovery and that is the humanitarian rule. His instructions should have been so confined. They were not so confined. This instruction and one other are upon the other theory. They should not have been given and the giving of them constitute reversible error. They permitted recovery upon a theory not in the case under the facts and the law.

VI. Other instructions covering the humanitarian doctrine are criticized because they assume contro-

verted facts. If they do, correction can be made in another trial. Instructions should never assume as true facts about which there is a controversy. We shall not further lengthen an opinion already too long by far. From what has been said, it follows that the judgment should be reversed, and the cause remanded, and it is so ordered.

All concur, except *Woodson, J.,* who dissents in opinion filed.

PER CURIAM.—The foregoing opinion of *Graves, P. J.,* in Division No. One, as modified by him after the case reached Court in Banc, is adopted as the opinion of this court. All concur except *Woodson, J.,* who dissents in opinion filed, and *Valliant, C. J.,* who is absent.

## DISSENTING OPINION.

WOODSON, J.—I dissent from what is said in the majority opinion about the so-called humanitarian doctrine, because in my opinion the petition neither states nor attempted to state a cause of action under that rule, as now understood; but for sake of the argument only concede that it does both, nevertheless, I dissent from it, for the reason that it is elementary in this State, at least, that under the common law rule, the plaintiff cannot recover for injuries received where the petition or the evidence shows that he was guilty of contributory negligence which directly contributed to his injury.

And it is equally elementary, that the plaintiff cannot state a cause of action or recover under the humanitarian doctrine without stating and proving that the plaintiff was guilty of negligence which placed him in a perilous position, and that notwithstanding his negligence the defendant saw, or by the exercise of ordinary care on his part could have seen, his peril in

242 Sup.—39

time to have averted the injury, but negligently failed to do so, and in consequence thereof, he was injured.

Not only that, but under the so-called humanitarian rule, the instructions to the jury must also be predicated upon the theory that the plaintiff was guilty of negligence which placed him in a perilous position and notwithstanding that fact the defendant saw, or by the exercise of ordinary care could have seen, his peril in time to have prevented the injury, but negligently failed to do so, and that in consequence thereof, he was injured. And if the instructions do not in substance so declare the law of the case to the jury, it is reversible error. This court has uniformly so held; and no case is to be found which does not so declare the law, "no, not one."

It must therefore be conceded that according to all the authorities the plaintiff under the common law rule cannot recover if he was guilty of contributory negligence, and according to the so-called humane rule the plaintiff cannot recover without he was guilty of negligence as before stated. That being indisputably true, I repeat, as I stated in the case of Nivert v. Railroad, 232 Mo. 626, and in Krehmeyer v. Transit Co., 220 Mo. 639, that those two causes of action cannot be properly united in the same petition, in the same or in separate courts, for the simple reason that they are inconsistent with each other, and both statements cannot be true.

It cannot be truthfully stated in one breath, that the plaintiff was free from negligence under the common law count, and guilty of negligence under the humanitarian count.

I am not unmindful of the fact that this court has repeatedly held that those two statements are not inconsistent and may be united in the same petition, in different, if not in the same count thereof, but that does not change the fact that they are in reality inconsistent with each other, any more than if we should

hold that black is white or that day is night; the fact would still remain that black is black, and not white, and that day is day and not night. The latter holding would be just as logical and no more fallacious than the former is; and the more often we so hold, the more often we will err.

I respectfully submit that the slugging case suggested by my learned associate in the majority opinion has no element whatever of the humanitarian doctrine in it. [After this case went into the hands of the printer the slugging case referred to was eliminated from the majority opinion, but it cannot be omitted from the dissenting opinion without recasting the whole of it.] Under the facts there supposed, it would be a clear case of liability under the common law rule of negligence, namely, the plain negligence of the engineer, and the want of negligence on the part of the person slugged and injured. The common law rule fully covers that case, and the books are full of such cases, none of them holding, even before the dawn of the so-called humanitarian doctrine, which is still in its swaddling clothes, that one person could lawfully injure another, whenever he discovered him in a place of danger, even though he had no right to be there, and where the former had no right to expect him. Why! Take the burglar for instance, who feloniously enters your house and is discovered; you have no legal right to shoot him down, or wilfully or negligently injure him solely on that account. All the law will justify you in doing is to use sufficient force to protect your life and property, and to remove him from your premises. When you go beyond that, you lay yourself amenable to the law. The same principle is announced in the case of State v. Parker, 96 Mo. 382. There Parker, the wrongdoer, who brought on the difficulty, with no felonious intent however, repented and attempted to withdraw from the combat he had brought on, but being hard pressed by his antagonist it became necessary

to save his own life, and he shot and killed him. Upon those facts, this court held that Parker was justified in killing Montgomery, his antagonist.

Our learned Commissioner, Mr. BROWN, was counsel in that case, and induced this court to hold anew in this State that old and familiar rule of law. That case has been cited with approval, by this court, and by the appellate courts of other States, as frequently, if not more so, than any other case which has ever been handed down by this court during its entire existence. This shows that the humanitarian rule has no place whatever in the supposed slugging case. Such a case is governed by the common law.

The consensus of all the authorities is, that the humanitarian or last-chance doctrine has no existence except where the plaintiff is guilty of negligence, and he has thereby placed himself in a dangerous place; but notwithstanding that fact, if the defendant actually saw, or by the exercise of ordinary care on his part, could have seen him in his perilous position in time to have averted the injury, but negligently failed to do so, then he would be liable under that rule, but not under the common law.

I also dissent from the conclusion reached by the majority opinion, for the reason, first, that the undisputed evidence shows that the plaintiff was guilty of negligence which directly contributed to his injury, which was not neutralized by the humanitarian rule. This is shown by the statement of the case in the majority opinion, namely, that the appellant's train had been to the depot, discharged its passengers, and was backing out from there empty, across Sixth street, without a rear end pilot, at a rate of speed of about five miles an hour. It must be conceded that such conduct was negligence.

Now as to the conduct of the respondent. He was driving a motor car, drawing a trailer, loaded with passengers, up Sixth street, at a speed of about three miles

an hour, and certainly he was in as good a position to view the appellant's train as was the position of the employees of appellant to view the respondent and his cars. That would have been true, even though the rear end pilot had been at his post of duty, at the time of the collision. Those facts are indisputable.

Now concede that the appellant was guilty of ordinary negligence, and that was all it was guilty of, in backing its train over Sixth street without a pilot, then how stands the case? The respondent was guilty of negligence in not caring for his own personal safety, the highest of all duties, and that of his passengers, who were in his care and keeping, and to whom he owed the highest degree of care known to the law, outside of self-preservation, to say nothing of the duty he owed to the appellant and its property and employees, which was unquestionably as high in degree as the duty the appellant owed to the respondent.

If the respondent can recover under those facts, then clearly the common law rule of negligence has been abrogated or suspended by the unauthorized action of this court.

The second reason I have for dissenting from the majority opinion is, that, even under the humane rule, as it is adopted in this State, the evidence does not make out a case for the respondent. The record shows that the appellant's train was running about twice as fast as was the car of the respondent and that each was equally capable of seeing the other. Under that state of facts, it does not arise to the dignity of sound reason, to say that the humanitarian doctrine applies, for the simple reason that, if the appellant could have seen the respondent in time to have averted the injury, it is also equally true that the respondent could have seen the appellant just as quickly; also if the appellant could have stopped the train, which weighed hundreds of tons, going twice as fast as respondent was going, in time to have prevented the injury, then

it is equally true, that the respondent could have stopped his cars, within the same time. Yet it is seriously contended that the respondent is entitled to a recovery.

Suppose under these same facts, with the added one that the rear end pilot had been at his post of duty at the time of the collision, and suppose he, instead of the respondent, had been struck and injured by the motor car, would he not, for stronger reasons than those advanced in favor of respondent, have been entitled to recover in this action? The mere asking of this question answers it in the affirmative.

Then by what manner of reasoning can it be logically contended that the respondent is entitled to a recovery in this case, under any rule of law?

It is not an answer to the foregoing observations to say that common law negligence and negligence under the humanitarian rule are both negligence, and for that reason both may be stated in the same count of the petition, any more than it is to say that a promissory note and a contract to purchase a hundred bushels of corn, are both contracts, and for that reason they may both be stated in the same count.

Both arguments are obviously fallacious, and neither can be sustained upon good rules of pleading.

I concede that the two classes of negligence mentioned, were it not for the fact that they are inconsistent with each other, might be properly joined in the same petition, but would have to be stated in separate counts, just as the note and the contract for the purchase of corn might be sued upon in the same petition, but clearly each cause would have to be stated in separate counts. I am, therefore, of the opinion that the judgment should be reversed, without remanding the cause.