[Civ. No. 1822.   Third Appellate District.—March 20, 1918.]

BAY SHORE LAUNDRY COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

WORKMEN'S COMPENSATION ACT—INJURY TO LAUNDRYMAN—REMOVAL OF SAFETY GUARD FROM WRINGING-MACHINE—WILLFUL MISCONDUCT.— Under subdivision 3 of section 12 of the Workmen's Compensation, Insurance and Safety Act (Stats. 1913, p. 279), which excludes from its provisions every case where the injury is proximately caused by willful misconduct of the injured employee, where an experienced laundryman, while operating a wringing-machine intentionally, de-

liberately, and willfully removed a safety guard which had been placed on the machine for his protection and to prevent accidents, he was guilty of such misconduct as to prevent the award of compensation for injuries resulting from such removal. .

APPLICATION for a Writ of Review originally made to the District Court of Appeal for the Third Appellate District to annul an award of the Industrial Accident Commission.

The facts are stated in the opinion of the court.

E. F. Laumeister, for Petitioner.

Christopher M. Bradley, for Respondents.

BURNETT, J.—The commission awarded one Paul Verdier compensation in the sum of $675 for injuries received while in the employment of petitioner, and the question involved herein is whether said commission exceeded its jurisdiction in making said award. In fact, the only question in dispute before us is whether the applicant is chargeable with "willful misconduct" within the contemplation of the "Workmen's Compensation, Insurance and Safety Act" (Stats. 1913, p. 279). Subdivision 3 of section 12 of said act excludes from its beneficial provisions every case where the injury is proximately caused "by willful misconduct of the injured employee." As to this, the law was changed in 1917, but the amendment did not take effect until January 1, 1918, and it is not disputed that the said statute of 1913 is applicable to the case at bar.

There is herein no controversy as to the facts, but the whole argument revolves around the conclusion of the commission that the applicant was not guilty of willful misconduct. The view of the case, taken by the commission, may be had from the following findings:

"That said injury arose out of, and in the course of, said employment, was proximately caused thereby and occurred while the employee was performing service, growing out of and incidental to the same as follows: His minor hand and arm were accidentally caught in a wringing-machine which the employee was operating, while it was in motion and while

the safety guard thereto attached was not in a position to prevent such an accident. . . .

"That the operation of said wringing-machine in said manner was not in deliberate violation of an enforced rule of instruction made by the employer for the protection of the employee, and although careless and negligent, it was not intrinsically reckless or foolhardy; that the said injury was not proximately caused by willful misconduct."

It is to be observed that the commission does not find what caused the safety guard to be displaced. The evidence herein shows that the applicant himself displaced it while the machine was in motion. There is no dispute, also, that he did this intentionally. It was not the result of thoughtlessness, inadvertence, accident, forgetfulness, or stress of emergency. Nothing of that kind is claimed. Indeed, the only attempted excuse is that he thought he might gain some time and that he had seen other employees do likewise. To remove the covering it was necessary to manipulate a lever, and this was done by Verdier thoughtfully, and we may say, deliberately. Neither is there any finding that the removal of the guard contributed to the accident and was therefore a proximate cause of the injury. But as to the evidence of that there can be no possible dispute. If the guard had been in place, the applicant would not have been hurt. There were, indeed, two conditions of circumstances inseparably connected with the injury. One was that Verdier's foot slipped from the brake, thereby causing him to lose his balance and fall toward the revolving machine, and the other was the fact that said machine was exposed to contact with his hand in consequence of the removal of said guard. If either of these conditions had not been present and operative, the injury to the hand and arm would have been avoided. It is plain, therefore, that the removal of the covering had a proximate causal connection with the injury, and, indeed, this is not disputed.

It was found that the act of the applicant was not "in deliberate violation of an enforced rule or instruction made by the employer for the protection of the employee." As a fact, this is partly true, but it carries an erroneous implication. The act of removing the guard was "deliberate," but there was no "enforced rule or instruction of the employer." However, it is plain that no such rule or instruc-

tion was required. This safety device was furnished by the. employer for the protection of the employee. The very object was to prevent such accidents, and its purpose was well known to the applicant, who was an experienced workman, having been engaged in that line for twenty years and being entirely familiar with the use of such device. There is no contention that he did not fully comprehend the significance of its use and the danger attending its operation without the covering. The applicant could not have been better informed if specific instruction had been given. He must have known that this protection was furnished for his safety, and how important it was that he should not remove it while the machine was in operation. The commission does, indeed, find that he was "careless and negligent," but not guilty of *willful* misconduct. In this connection, it is admitted by respondents that he is properly chargeable with misconduct, but it is claimed that it lacks the element of *willfulness* contemplated by the statute. The contention is that there must be a *"mens rea,"* a condition of mind bordering upon criminality, to justify the commission or the court in repudiating his claims for compensation. In support of the position this quotation is made from *In re Burns,* 218 Mass. 8, [105 N. E. 601]: "Willful misconduct is much more than mere negligence or even gross culpable negligence . . . conduct of a *quasi*-criminal nature." Attention is called, also, to what was said in *Diestelhorst* v. *Industrial Accident Commission,* 32 Cal. App. 771, [164 Pac. 44], as follows: "May not a person, although guilty of an infraction of an order given for his protection, show that at the time he was unmindful of the order and that his act was the result of inattention and thoughtlessness and without any real purpose to be contumacious?"

The doctrine of the foregoing decisions may be fully indorsed and accepted, but it is difficult to see what comfort is thereby afforded to the applicant herein. The Compensation Act of 1913, section 55, provides: "No employee shall remove, displace, damage, destroy or carry off any safety device or safeguard furnished and provided for use in any employment or place of employment, or interfere in any way with the use thereof by any other person, or interfere with the use of any method or process adopted for the protection of any employee in such employment, or place of employment, or

fail or neglect to do every other thing reasonably necessary to protect the life and safety of such employees.''

Section 67 of said act provides: ''Every employer, employee or other person who, either individually or acting as an officer, agent or employee of a corporation or other person, violates any safety provision contained in sections fifty-two, fifty-three, fifty-four or fifty-five of this act, or any part of any such provision, or who shall fail or refuse to comply with any such provision or any part thereof, or who directly or indirectly, knowingly induces another so to do is guilty of a misdemeanor.''

It is to be observed, furthermore, that respondents, said commissioners, by virtue of the authority conferred upon the commission by said compensation act, made and issued certain ''Laundry Safety Orders,'' effective August 1, 1916, in which the following is provided:

''a. All extractors must be equipped with metal guards which must entirely cover the openings to the outer shell. The guard must always be kept in position when the extractor is in motion.''

Section 62 of said act provides that every employee shall obey and comply with the requirements of the safety orders of the commission. Hence, it cannot be disputed that Verdier was guilty of a crime when he removed the guard and that he knew that his act was likely to result in injury to himself. The Massachusetts case, therefore, does not save him. We have already seen that there is no room for the application of the Diestelhorst decision.

Moreover, there can be no doubt that the misconduct of Verdier was *willful* within the meaning of the statute. The definition of the term is found in the code and it must be presumed that in said compensation act the legislature had in view that definition. Section 7 of the Penal Code provides: ''The word 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law or injure another, or to acquire any advantage.''

That Verdier had a willingness and purpose to commit the act of removing the guard is beyond question. From the act itself, such presumption would follow, but he makes it certain by his testimony as to why he performed the act.

It is not required to show that the injured person committed the wrongful act *maliciously* to prevent his recovery. If the legislature had so intended it would, of course, have so provided. It was deemed proper to exclude one who was guilty of intentional or willful wrongdoing, and if we are to regard the facts in this case and the plain ordinary significance of the terms employed by the legislature, it must be held that the applicant herein is in the excluded class.

In brief, the situation is this: Verdier's act constituted a misdemeanor and was therefore of a criminal nature. According to his testimony he performed said act for a definite purpose. It was therefore intentional, deliberate, and willful. Furthermore, he was an experienced laundryman, and understood the construction and operation of the mechanism. He realized that it was a high-speed machine and dangerous; he knew that the guard was provided for his protection and to prevent accidents, and that if he removed it the danger of accident was greatly increased. There was no good reason for his act. In fact, the only excuse offered by him was that he thought he might save time and he had seen other employees do the same thing. No such explanation could be accepted as satisfactory by any court. If he is to be exonerated for a reason like that, the provision of the statute becomes a meaningless and empty phrase. Besides, we may add, that it is quite apparent that he would not have saved any appreciable time by removing the guard while the machine was in motion, as the performance of that act required only a fraction of a second.

Indeed, the case is covered and controlled by the decision of the supreme court in *Great Western Power Co.* v. *Pillsbury,* 170 Cal. 180, [149 Pac. 35, 9 N. C. C. A. 466], and *Fidelity and Deposit Co.* v. *Industrial Accident Commission,* 171 Cal. 728, [L. R. A. 1916D, 903, 154 Pac. 834]. In the former it is held that "a workman who violates a reasonable rule made for his own protection from serious bodily injury and death is guilty of misconduct, and that where the workman deliberately violated the rule with knowledge of its violation, he is guilty of willful misconduct."

Therein the willful misconduct consisted in handling "hot" electrical wires without the use of rubber gloves, contrary to an express rule of the employer.

In the other case the supreme court held that the employee was guilty of willful misconduct where he met his death, while engaged in his employer's business, from the overturning of an automobile driven by him in violation of the State Motor Vehicle Act fixing a speed limit of thirty miles per hour.

As suggested by petitioner, these two cases represent two different classes of offenders,—the first, where the provision breached by the employee is contained in a private rule or regulation of the employer. In this class the employee must have actual knowledge of the existence of the rule and must be bound to obey it to make his willful breach thereof willful misconduct. The second class represented by the Fidelity case, *supra*, is where the provision breached is embodied in a public statute. In this class the employee is charged with knowledge of the provision, and the breach thereof is willful misconduct as a matter of law. The case herein manifestly belongs to this latter class. It may be added that there was not even an attempt made to dispute the presumption that the applicant had knowledge of the existence of the statute and regulations in reference to safety devices.

We do not feel called upon to consider specifically all the cases cited. The essential principles herein involved are well settled, and we feel constrained to hold that the order awarding compensation was beyond the jurisdiction of the commission, and it is therefore annulled.

Chipman, P. J., and Hart, J., concurred.