[Civ. No. 7172. First Appellate District, Division One.—December 30, 1930.]

CLIFFORD M. COLEMAN, Appellant, v. CITY OF OAKLAND (a Municipal Corporation), Respondent.

L. L. Steele for Appellant.

Preston Higgins, City Attorney, and Homer W. Buckley, Deputy City Attorney, for Respondent.

DOOLING J., *pro tem.*—This is an appeal from a judgment in favor of defendant, City of Oakland, entered after an order sustaining a demurrer to plaintiff's third amended complaint.

The plaintiff sought to recover for personal injuries and property damage alleged to have been caused by a motor-truck owned and operated by defendant, City of Oakland. Paragraph IV of the complaint contains an allegation that the collision was caused by a dangerous and defective mechanical condition of said motor-truck, to wit, a broken spring, which rendered the truck unmanageable; together with allegations of knowledge for a long time and neglect to remedy such condition within a reasonable time. These allegations are conceded by respondent to be sufficient to bring the case within section 2 of Statutes of 1923, page 675, if an automobile is within the class of property covered by that section. But it is contended by respondent that under the rule of statutory construction, *ejusdem generis,* that statute refers only to real property, and cannot include the case of an automobile operated on the public streets.

The section in question reads: "Counties, municipalities and school districts shall be liable for injuries to persons and *property* resulting from the dangerous or defective

condition of public streets, highways, buildings, grounds, works and *property* in all cases where the governing or managing board of such county, municipality, school district, or other board, officer or person having authority to remedy such condition, had knowledge or notice of the defective or dangerous condition of any such street, highway, building, grounds, work or *property,* and failed or neglected for a reasonable time after acquiring such knowledge or receiving notice to take such action as may be reasonably necessary to protect the public against such dangerous or defective condition.''

It is respondent's contention that the general word ''property'', following as it does the words ''public streets, highways, buildings, grounds, works'', must take its color from them, and can only apply to other classes of real property not therein specifically enumerated, under the doctrine *ejusdem generis.*

■ ''The doctrine of *'ejusdem generis'* simply means that where general and specific words relating to the same things are associated together they take color from each other, and the general words are restricted to a sense analogous to that of the less general.'' (23 Cal. Jur., p. 755.) ■ But ''the doctrine of *ejusdem generis* is but a rule of construction to aid in ascertaining the meaning of the legislature, and may be used to carry out but not to defeat the legislative intent''. (23 Cal. Jur., p. 756; *In re La Société Francaise,* 123 Cal. 525 [56 Pac. 458, 787].)

■ In this case the section above quoted contains within itself a strong indication that the word ''property'' was not intended to have a restricted meaning. We have intentionally italicized the word ''property'' in the places in which it occurs in section 2, Statutes of 1923, page 675. In the first instance its meaning is not restricted. It imposes a liability ''for injuries to persons and property''. Clearly the liability is for injuries to property of any character, real or personal. Separated from the first place of its occurrence by only fifteen words it is used again. In its second use we are asked to hold that it has an entirely different and more limited meaning. To do so would require some stronger reason than a rule of construction which is merely an aid in ascertaining the legislative intent. It seems un-

likely that the legislature would have used the same word in such close juxtaposition with such widely different meanings. ▊ "It is a well-established rule of construction that when a word or phrase has been given a particular scope or meaning in one part or portion of a law it shall be given the same scope or meaning in other parts or portions of the law, and particularly in the same section thereof." (*Ransome-Crummey Co.* v. *Woodhams*, 29 Cal. App. 359, 360 [156 Pac. 62].) We are satisfied that the word "property" in this section is broad enough to cover the case of a motor-truck in a dangerous or defective condition (Cf. *Huff* v. *Compton City Grammar School Dist.*, 92 Cal. App. 44 [267 Pac. 918]; *Dawson* v. *Tulare Union High School*, 98 Cal. App. 138 [276 Pac. 424]).

Paragraph V of the complaint reads: "That at all times herein mentioned the City of Oakland, a municipal corporation, was and now is the owner of, maintained and operated a certain municipal air port located within the corporate limits of said city, and in the maintenance of said air port said corporation was accustomed to, and did make a charge for those who used or accepted accommodations therein; that at the time the injury in question was sustained, said defendant, Lawrin Garrett (the driver of the truck) was engaged in the improving, maintaining, building and constructing of the said municipal air port."

▊ By these allegations appellant seeks to hold the City of Oakland under the common-law liability imposed upon a municipal corporation when it is acting in a proprietary, as distinguished from a governmental, capacity. The general distinction between the two functions of a city is thus stated in *Chafor* v. *City of Long Beach*, 174 Cal. 478, 487, 488 [Ann. Cas. 1918D, 106, L. R. A. 1917E, 685, 163 Pac. 670]: "Under the theory of the common law, that the municipality is protected from liability only while exercising the delegated functions of sovereignty, the governmental powers of a city are those pertaining to the making and enforcing of police regulations, to prevent crime, to preserve the public health, to prevent fires, the caring for the poor and the education of the young; and in the performance of these functions all buildings and instrumentalities connected therewith come under the application of the

principle (*City of Kokomo* v. *Loy*, 185 Ind. 18 [112 N. E. 994]).

"But it is of course true that modern cities and towns enter upon many forms of activity, operate utilities for the benefit of the inhabitants, and provide many means for the easing or improving of the condition of the people that were never dreamed of at common law. Nevertheless the uniform holding as to all such activities, on principle manifestly just to the people themselves, is that no matter how beneficial they may be in a general sense to the inhabitants of the municipality, unless they are governmental in essence, the municipality's conduct in managing them is controlled by the same rules of liability that apply to an individual. Thus while school houses, city halls, jails, fire houses, are with much uniformity held to be instrumentalities for governmental purposes, no such rule applies to other buildings constructed by a municipality, though for the benefit, convenience or advantage of its people . . .

"The cases so holding with reference to municipal water plants and their structures, and gas plants and their structures, are so numerous as not even to call for specific citation. The same rule is universally applied to markethouses built by the municipality and maintained for the convenience of the people."

We have no hesitancy in deciding that in the conduct of an air port the municipality is acting in a proprietary capacity. An air port falls naturally into the same classification as such public utilities as electric light, gas, water, and transportation systems, which are universally classed as proprietary. Its nearest analogy is perhaps found in docks and wharves. "An air port with its beacons, landing fields, run-ways and hangars, is analogous to a harbor with its lights, wharves and docks; the one is a landing place and haven of ships that navigate the water; the other of those that navigate the air." (*Dysart* v. *St. Louis*, 321 Mo. 514 [62 A. L. R. 762, 11 S. W. (2d) 1045].)

"When a municipal corporation maintains a public wharf, and charges toll or wharfage to the owners of vessels making use of the wharf, it is liable to the same extent as an individual wharf-owner." (19 R. C. L., p. 1134; 43 C. J., p. 1175.)

We are satisfied that the allegations of paragraph V above quoted are sufficient, if proved, to establish that in operating the air port the City of Oakland acted in a proprietary capacity. This conclusion is in accord with the only case on the precise question which has been called to our attention (*City of Mobile* v. *Lartigue,* 23 Ala. App. 479 [127 South. 257]).

Finally respondent insists that its demurrer was properly sustained because there are two causes of action in the complaint which are not separately stated, i. e., a cause of action based on the Statute of 1923, and a cause of action for the common-law liability. In support of this claim respondent cites four cases: *Matz* v. *Chicago & A. R. Co.,* 88 Fed. 770, *McHugh* v. *St. Louis Transit Co.,* 190 Mo. 85 [88 S. W. 853], *Scott* v. *Robards,* 67 Mo. 289, and *Creen* v. *Michigan C. R. Co.,* 168 Mich. 104 [Ann. Cas. 1913C, 98, 133 N. W. 956]. Of these cases the first two state a rule of pleading for the state of Missouri which has since been expressly overruled (*White* v. *St. Louis & M. R. R. Co.,* 202 Mo. 539 [101 S. W. 14, 20, 21]; *Clark* v. *St. Joseph T. R. Co.,* 242 Mo. 570 [148 S. W. 472, 478]); the expression on the subject in the Creen case was mere *dictum* since the complaint there passed upon was in two counts, and was held good on that ground; and the Scott case is not in point and does not deal with the pleading of statutory and common-law negligence. In drawing his complaint the pleader has followed the requirement of Code of Civil Procedure, section 426, subdivision 2, and set out "a statement of the facts constituting the cause of action, in ordinary and concise language". The accident was single, and the recovery sought is single. If the facts may entitle plaintiff to recover on two theories that does not render his pleading duplicitous (*Mills* v. *Barney,* 22 Cal. 240). It has been too often held to be open to doubt that in this jurisdiction common-law and statutory negligence need not be pleaded in separate counts (*Opitz* v. *Schenck,* 178 Cal. 636 [174 Pac. 40]; *Martin* v. *Shea,* 182 Cal. 130 [187 Pac. 23]; *Scharpf* v. *Union Oil Co.,* 19 Cal. App. 100 [124 Pac. 864]).

Judgment reversed with direction to the trial court to overrule the demurrer.

Tyler, P. J., and Cashin, J., concurred.