[Civ. No. 14073.   Second Dist., Div. Two.   Aug. 13, 1943.]

BURTON E. GREEN INVESTMENT COMPANY (a Corporation), Appellant, v. CHARLES J. McCOLGAN, as Franchise Tax Commissioner, etc., Respondent.

Claude I. Parker, Bayley Kohlmeier and Adele Walsh Moran for Appellant.

Robert W. Kenny, Attorney General, H. H. Linney, Assistant Attorney General, and Adrian A. Kragen, Deputy Attorney General, for Respondent.

MOORE, P. J.—The question for decision is whether a dividend paid by a California corporation, producing its oil only in this state, which reported all of its revenues as gross income for franchise tax purposes and which was allowed a deduction for percentage depletion for franchise tax purposes in excess of its depletion computed on the basis of cost, is deductible by the recipient corporation.

This action involved the obligation of the plaintiff under the Bank and Corporation Franchise Tax Act, (Deering's Gen. Laws, 1937, Act 8488) hereinafter referred to as ''the Act.'' Plaintiff, as a California corporation, duly filed its franchise tax return for the year 1938. As required the return was based upon plaintiff's income for 1937, the gross thereof being reported at $598,673.56. Of this amount plaintiff listed $465,000 as a dividend paid to it in 1937 by Belridge Oil Company, hereinafter referred to as Belridge. Plaintiff deducted this Belridge dividend from its return to the Franchise Tax Commissioner in 1938, because it was the dividend of a domestic corporation, earned, declared, and paid in California (sec. 4, subd. (3)). The remainder of its 1937 income was excluded as not proper items to be reported for assessment for franchise tax purposes. They are not involved in this discussion. Since none of its income was reported as the basis for computing its franchise tax, plaintiff paid a tax of $25, on its 1938 return.

In due season defendant served notices on plaintiff of his intention to assess additional taxes on its franchise for 1938. The aggregate of the two additional sums to be assessed was

$6,373.28 and the interest charged on the two items was $934.38.*

Plaintiff protested the proposed assessments but paid them with interest under protest in October, 1940, after which this action followed to recover the $7,307.66 so assessed, charged, and collected by defendant. Inasmuch as plaintiff's exclusion from its 1938 return of the Belridge dividend brought on the additional assessments by defendant, in order fairly to appraise the factors of the controversy, we now expose to view the franchise tax return filed by Belridge in 1938 which also reported its income of 1937 as the basis for computing its franchise tax for 1938.

Belridge's gross income for 1937 was reported as $7,190,-232.47 (all of which was from oil except $71,677.40) with deductions of $4,207,961.85 leaving a net income for franchise tax purposes of $2,982,270.62. Included among its deductions for 1937 was the sum of $1,760,242.27 for depletion claimed under section 8, subdivision (g) of the Act which authorizes a deduction for depletion at the rate of $27\frac{1}{2}$ per cent of the gross income from oil and gas wells. Such percentage of depletion was allowed Belridge by defendant in computing its franchise tax for 1938. The depletion sustained by Belridge for the year computed on the basis of cost was only $74,901.03 which was $1,685,341.24 less than $27\frac{1}{2}$ per cent of the gross income of Belridge for 1937. The Belridge return for 1938 for franchise tax purposes shows that this corporation deducted for depletion in 1937 the sum of $1,760,242.27, or $27\frac{1}{2}$ per cent of its gross income for that year. Also it discloses that the franchise tax assessed to Belridge for the same year computed on the basis of a deduction of $27\frac{1}{2}$ per cent of its gross income for depletion was paid

---

*To be exact the assessments occurred in this manner: On July 25, 1939, the commissioner issued his first notice of an additional assessment for 1938 in the amount of $5,558.21 on the ground that plaintiff had overstated its deduction under section 8, subdivision h for dividends received. Plaintiff protested; paid the assessment, with $734.61 interest and filed claim for a refund. The claim having been disallowed, this action was filed. On November 18, 1941, a further notice of additional franchise taxes to be paid by plaintiff for 1938, in the sum of $815.07, and interest in the sum of $199.73, the same procedure having been exhausted, a supplemental complaint was filed for such sum with interest amounting in all to $1,014.84.

by Belridge. This deduction by Belridge was apparently not an error but was computed as correct, for none of the numerous disbursements for federal income tax, federal excess profits tax, and franchise tax charges was taken as a deduction for franchise tax purposes. It declared and paid dividends that year in the amount of $2,400,000 out of which came the $465,000 dividend paid plaintiff.

It was stipulated that in computing the additional amount of franchise tax to be paid by plaintiff for 1938, defendant concluded that only 62.968 per cent of the Belridge dividend paid during 1937 had been included in the measure of the tax imposed by the Act on Belridge. In deriving this percentage the commissioner used two factors. Factor A resulted from deducting the Belridge franchise tax of 1937, to wit: $116,499.55 from its net income of the same year, namely, $2,982,270.62, leaving $2,865,771.07. Factor B resulted from adding to such net income for 1937 the portion of deduction for depletion ($1,685,341.24) allowable to Belridge for franchise tax purposes for 1937 by which the depletion allowed Belridge exceeds the depletion sustained computed on the cost basis. From the sum resulting from such addition, take the franchise tax expense of 1937, to wit: $116,499.55 leaving as factor B $4,551,112.31. By dividing factor A by factor B the commissioner obtained the percentage of dividends paid by Belridge, in 1937 which have been included in the measure of the tax imposed by the Act on Belridge. Such percentage was 62.968 which multiplied by $465,000 determined the portion of the Belridge dividend of 1937 included in the measure of the tax was $292,801.20. This product was determined by the commissioner to be deductible under section 8 (h). No attempt is made in the stipulation of facts to demonstrate the correctness of the calculation or of the percentage or of the formula.

Since plaintiff contends that the entire dividend was deductible for franchise tax purposes as having been declared by Belridge from income "included in the measure of the tax" imposed by the Act on Belridge it appears that the determination of plaintiff's liability for the additional taxes assessed and collected by defendant must be determined by a construction of the language of the Act.

Section 4a provides for a franchise tax to be fixed at a percentage of the total net income for the next preceding

calendar year "according to or measured by such net income."

Section 4 (3) requires that every corporation doing business within this state and not expressly exempted from taxation by the constitution shall annually pay, for the privilege of exercising its corporate franchise, "a tax according to or measured by its net income" to be computed at the rate of four per centum "upon the basis of its net income" for the next preceding year.

By section 7 "net income" is defined to be the gross income less deductions allowed. By section 8 the allowable deductions are defined. Among the items listed as deductible is "depletion" which is treated in subdivision (g) as follows:

*"Depletion.* (1) In the case of mines, oil and gas wells, other natural deposits and timber, a reasonable allowance for depletion and for depreciation of improvements according to the peculiar conditions in each instance, such reasonable allowance in all cases to be made under the rules and regulations to be prescribed by the commissioner."

*Computation of depletion.* "In the case of leases the deduction shall be equitably apportioned between the lessor and the lessee.

"The basis upon which depletion is to be allowed in respect of any property and the amount of depletion allowable shall be as provided in sections 23(m), 113 and 114 of the Federal Revenue Act of 1936, which are, for the purposes of this subdivision, hereby referred to and incorporated with the same force and effect as though fully set forth herein; provided, however, that the words 'with the approval of the secretary' in said sections shall be deemed omitted.

Section 114 of the Federal Revenue Act of 1936, incorporated into section 8 subdivision (g) is so far as applicable as follows:

"Section 114. Basis for Depreciation and Depletion. (a) Basis for depreciation. The basis upon which exhaustion wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 113(b) for the purpose of determining the gain upon the sale or other disposition of such property. (b) Basis for depletion.

" (1) General rule. The basis upon which depletion is to be allowed in respect of any property shall be the adjusted basis provided in section 113(b) for the purpose of determining the gain upon the sale or other disposition of such

property, except as provided in paragraphs (2), (3), and (4) of this subsection. . . .

"(3) Percentage depletion for oil and gas wells—In the case of oil and gas wells the allowance for depletion under section 23(m) shall be 27½ per centum of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance under section 23(m) be less than it would be if computed without reference to this paragraph. . . ."

Section 113 (b) (1) (B) of Federal Revenue Act of 1936 is as follows:

"(B) In respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent allowed (but not less than the amount allowable) under this Act or prior income tax laws. Where for any taxable year prior to the taxable year 1932 the depletion allowance was based on discovery value or a percentage of income, then the adjustment for depletion which would have been allowable for such year if computed without reference to discovery value or a percentage of income;"

Article 113 (b)-1 of Federal Regulations 94 is as follows:

"The deduction by which the cost or other basis is to be decreased shall include deductions allowed under section 114(b), (2), (3), and (4) of the Revenue Act of 1932, the Revenue Act of 1934, and the Revenue Act of 1936, for the taxable year 1932 and subsequent taxable years, . . . ."

Subdivision (h) of section 8 provides for the deduction of dividends received during the income year from a corporation doing business in this state "declared from income which has been included in the measure of the tax imposed by this act upon the bank or corporation declaring the dividend."

From these sections we are to determine whether the Belridge dividend of $465,000 received by plaintiff was declared from income which had "been included in the measure of the tax" imposed by the Act upon Belridge (sec. 8 subd. (h)). Defendant's position is that because the 27½ per cent of the gross income from the oil wells operated by Belridge exceeded the depletion deduction based upon actual cost, the excess of the deduction allowed over actual cost depletion is not a part of income which had been included in the measure of the

tax imposed, within the meaning of section 8 (h). Plaintiff maintains that it should deduct the entire dividend because it was declared from income which had been "included in the measure of the tax." Defendant refers us to no provision in the Act providing that if depletion based on cost is a lesser amount than depletion computed at 27½ per cent of gross income, the lesser figure must be used in the measure of the tax. If the declaring corporation properly deducted depletion at 27½ per cent of the gross then any dividends paid out of the net income after such deduction are declared from income which had been "included in the measure of the tax" and are properly deductible by the recipient corporation. If it were true that net income is the "measure of the tax," then never could a recipient corporation deduct its dividend from a domestic corporation earning its income from a California oil pool. Under such construction the question of deduction for depletion becomes immaterial.

The word "income" is used in the Act in only two senses, to wit: gross income, and net income. Both phrases are used in the sections above quoted and in sections 6 and 7 where both are defined. In numerous sections of the Act one may find the phrase "a tax according to or measured by net income." Section 4(3) provides that "every corporation . . . shall annually pay to the State . . . a tax according to or measured by its net income." ▮ The term "net income" (subds. (1) and (3), sec. 4, Act 8488) was used to specify the sum which would constitute the basis for the calculation of the franchise tax. It does not constitute the "measure of the tax." The income included in the measure of the tax is all income. In order to measure the tax all deductions allowable under the Act including 27½ per cent of the gross income are taken. Following this rule then any dividend paid from net income derived thereby would be a dividend paid out of income included in the measure of the tax. As such it is exempt from franchise tax in the hands of the recipient corporation.

If the total Belridge income for 1937 was included in its gross income for franchise tax purposes and if out of its earnings of 1937 that corporation paid the dividend in question to plaintiff out of profits earned in that year, it must follow that the entire dividend so paid to plaintiff was declared from income which had been included in the measure of the tax. If it was, then it was deductible in full. ▮ The

very purpose of section 8 subdivision (h) is to avoid double taxation and thereby prevent the destruction of capital assets. While it aims to tax all income received as dividends (except those exempted by law) which have not been taxed while in the treasury of the dividend payor, at the same time it purposes to avoid the inclusion of the same income in the measure of the tax to be paid by two or more different taxpayers. If the same dividend is included in the measure of the tax paid by two taxpayers successively under the Franchise Tax Act, the result is multiple taxation. It was to avoid such injustice that the Tax Commission reported to the governor on March 5, 1929, the proposed constitutional amendment "to enable the legislature to extend special treatment to dividends received from a corporation which has already paid the tax with the object of avoiding double taxation." (California State Printing Office Publication No. 63725, p. 278.)

Section 8 subdivision (h) was first enacted in 1929. It then provided for the deductibility of dividends received during the taxable year from income arising out of business done in this state. This was construed to mean that it did not require dividends to arise out of business done in this state by the corporation which paid the dividends. (*Corporation of America* v. *Johnson*, 7 Cal.2d 295 [60 P.2d 417].) Such construction allowed a deduction where the corporation paying the dividend was not a California corporation and did no business in this state but merely owned stock in corporations operating in California from which it received income. The section was first amended in 1933 so that only those dividends were deductible which were received during the taxable year from a corporation actually doing business in California declared from income arising out of business done in this state. The effect of this amendment was to make the deduction not available to any corporation not doing business within California. It was designed to tax all dividend payments made out of income earned in California which had not been subjected to California taxation in the hands of the declaring corporation. Commenting upon the 1933 amendment Professor Traynor wrote that the 1933 amendment "permits the deduction of dividends from corporations taxable under the Act. . . . It prevents the deduction of dividends from corporations . . . not taxable under the state Constitution, in keeping with the purpose of the amended Act to allow only deductions necessary to avoid double taxation. . . ." (23 Cal.L.Rev. 65.)

The aim of the Legislature was not to change the meaning of the section but merely to emphasize its intention to avoid double taxation. The 1937 amendment of section 8 subdivision (h) was not designed to restrict the dividend deduction solely to net income. Such intention would have been stated in language to express such purpose. Therefore the 1937 amendment, which controls in this case, was not intended to alter its meaning as it was expressed in 1933.

Further proof of the legislative intention is to be found in section 9 subdivision (d) which was also enacted in 1937 when the phrase "included in the measure of the tax" first appeared in section 8 subdivision (h). Section 9 subdivision (d) reads as follows:

"Section 9. In computing net income no deduction shall be allowed for:

(d)    Any amount otherwise allowable as a deduction which is allocable to one or more classes of income not included in the measure of the tax imposed by this act. . . ."

The language there used refers to income which is excluded from the computation of the franchise tax. That section was designed to prevent corporations from deducting amounts properly allocable to income but not subject to taxation under the Act. The language of section 9 subdivision (d) leaves no doubt that "income" is used in the sense of gross income not subject to the franchise tax. "Net income" could not have been in the mind of the legislature in the phrase, "allocable to . . . income not included in the measure of the tax imposed. . . ." Deductions are not *allocable* to net income. A deduction expires the moment it is subtracted from the gross income. Throughout the Act we are constantly reminded that some deductions are allocable to certain gross incomes. In view of the use of the word income in section 9 subdivision (d) in the sense of gross income we are convinced that it has the same significance in section 8 subdivision (h). The Legislature could not have intended to use a significant word in two different senses in the same statute (*Ransome-Crummey Company* v. *Woodhams,* 29 Cal.App. 356 [156 P. 62]; *Coleman* v. *Oakland,* 110 Cal.App. 715 [295 P. 59].)

Since the gross income and specified deductions are the factors included in arriving at the net income, the conclusion is unavoidable that it is gross income that is included in the measure of the tax.

It is a significant observation that the sovereignty

does not by any method of taxation seek to tax the capital of any income-producing business. It is because of this principle of preserving capital intact that deductions are allowed for depletion and depreciation. The one is designed to avoid taxation upon the exhaustion of a natural resource; the other to avoid exhaustion of property used in business.

Whatever method of computing depletion be followed, under any system, the purpose is to leave in the hands of the taxpayer unappropriated that portion of the cost attributable to the amount of capital exhausted in earning the income on which any variety of tax is to be paid for the particular taxable year. In view of the extreme difficulty of deriving a precise formula whereby mineral resources will be exhausted it was obviously determined that depletion based upon a percentage of the gross income from the mineral or oil deposit most closely approximates the actual physical exhaustion. Such was evidently in the mind of Congress in enacting section 114 of the Revenue Act of 1936 whereby it was provided that the exhaustion of capital should be allocated to those years in which it was actually sustained by the coordination of income received from the property within the taxable year. From the Federal Revenue Act and our own Franchise Tax Act it appears that percentage depletion is not a dole to mine and oil operators. It is found to be a valuable factor in computing the current income of the taxpayer and is deducted from the gross income and must be taken into account in order to determine the taxpayer's basis for gain or loss on a sale or exchange of the property and to compute future cost depletion. If it represents a positive exhaustion of the capital it should be deducted by the owner of the property as a method of avoiding the exhaustion of his capital. If it is properly deducted in computing the oil operator's income for dividend purposes it should not thereafter be charged to the recipient corporation in computing his income for franchise tax purposes. To avoid such a hardship the recipient is authorized to deduct the dividend which has passed through the tax mill before its distribution by the declaring corporation. ■ Plaintiff was entitled to deduct the dividend because it had been paid by a domestic corporation out of income which had been included in the measure of the franchise tax assessed against such domestic corporation.

■ Defendant maintains that the Belridge dividend is not deductible in full by plaintiff because it represents Bel-

ridge income which had been computed on a basis which was in excess of depletion computed on the basis of cost. Not only does the Act make no provision for computing depletion on the basis of cost but by the very federal statute incorporated into the Act it is specifically provided that 27½ per centum of the gross income shall be allowed for depletion.

Finally, the defense is based upon the fallacious concepts (1) that a portion of the Belridge dividend was paid from an untaxed source and (2) that it was declared from franchise tax net income and from the excess of the statutory percentage depletion over cost depletion. That such are erroneous concepts must be clear to the impartial student after a study of the Act and a consideration of its design. The "net income" referred to in the Act serves no function except that of comprising a factor in the formula whereby to compute the amount of the franchise tax. If used in the sense of a fund for dividends, it is at once seen that it has no relation to the corporation's actual earnings. Inasmuch as the excess of the percentage depletion over cost depletion had no effect upon the declaration of dividends, the Belridge dividend of $465,000 was not declared out of such excess. Whether the amount of net income for the purpose of computing the franchise tax is increased or decreased by any adjustment which does not at the same time proportionately enlarge or diminish profits, it will not affect either the declaration of a dividend or the amount thereof. The "excess" of statutory depletion allowance does not augment the fund available for dividends. Such allowance is for the purpose of preventing a depletion of capital. If it should unwisely be distributed along with the net earnings in the form of dividends, the capital investment of the corporation would ultimately have all been paid out to the shareholders. But if it is kept intact as a reserve for depletion it performs its function as does any other reserve set aside for the purpose of perpetuating the capital assets. Since gross income is the original source of all dividends and since all of the Belridge income was reported as gross income, all of its dividends were from a fund which had been flailed by the tax master which fund was itself the measure of the tax.

For these reasons we conclude that the dividend paid plaintiff by Belridge was a deductible item in computing plaintiff's franchise tax in 1938; that a percentage depletion deduction was proper rather than a depletion deduction based upon cost.

It is therefore ordered, adjudged and decreed that the judgment be and it is hereby reversed and the court below is directed to enter judgment in favor of plaintiff as prayed.

McComb, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 11, 1943.