[Civ. No. 12588.   First Dist., Div. Two.   Apr. 6, 1944.]

WAYNE BATEMAN, Respondent, v. DOUGHNUT COR-
PORATION OF AMERICA (a Corporation), Defend-
ant; VICTOR UPPHOFF, Appellant.

Brown, Rosson & Gillis, Myron Harris and Wm. H. Older for Appellant.

Charles A. Christin, Robert G. Partridge and William A. White for Respondent.

NOURSE, P. J.—This is an appeal from a judgment in favor of plaintiff in the sum of $25,000 and from an order denying a judgment notwithstanding the verdict. Appellant directs his appeal solely to the fact that certain requested instructions were not given and that error was committed in receiving in evidence a photograph of the scene of the accident, taken after certain changes were made.

The facts of the case may be summarized as follows: Upphoff entered into a contract on January 21, 1941, with

the Doughnut Corporation of America, respondent's employer, to install a hydro-electric freight elevator in the plant of the corporation. The elevator was operated by means of a rope which extended inside the shaft and was pulled up or down to make the elevator rise or descend. When the elevator went from the ground floor to the mezzanine, the lower gate on the mezzanine would rise until it was opposite the upper gate, at which time both gates would rise. Each of the two gates covered one-half of the door opening. In the upper gate there was an opening approximately 5 inches by 30 inches, through which a man could place his arm to manipulate the rope operating the elevator. At the time of the accident there was a board at the top of the upper gate used as a fastening for the wire mesh which covered the gate. This board also ran across the top of the opening.

Respondent was an employee of the Doughnut Corporation and on the day of the accident was engaged in weighing out the ingredients from which the doughnuts were made and placing them in large cans. The cans weighed approximately 30 to 40 pounds when empty. Respondent would then load the cans on a dolly, pull the rope and send the elevator to the mezzanine, where another employee would unload the dolly and return it to the respondent. This was the only elevator on the premises and had been used for this purpose for about a month before the accident. Respondent, however, had been engaged in other duties on the premises and had never used the new elevator before the day in question, although he had performed this type of work previously using the elevator which was formerly there.

Respondent was apparently working faster than the man unloading ingredients on the mezzanine and when the elevator and dolly did not return, respondent walked upstairs. He saw some empty containers ready to be sent downstairs and approached the elevator intending to send the containers below. The elevator meanwhile had drifted so that it was between the floor levels. Respondent placed his arm through the slot provided for that purpose to raise the elevator to floor level. As he pulled the cable his arm was caught and pinned between the lower gate and the board across the top of the upper gate, raising him off his feet and causing certain serious injuries.

Previous to the accident, complaints had been made by

the manager of the Doughnut Corporation to the appellant that the elevator drifted, and he was told by appellant to go ahead and use the elevator, because use would cause the valves to swell and the drifting would cease. Appellant does not deny that he consented to the use of the elevator. There appears no question but that the mechanism of the elevator was defective and that the board across the top of the slot was an unnecessary hazard.

Appellant points out that the contract of construction provided that he would arrange for the inspection of the elevator by the Industrial Accident Commission and that he had not secured such an inspection. He contends therefore that the operation was in violation of Labor Code, section 7301.

Appellant requested instructions based on section 7301 of the Labor Code which reads as follows: "No elevator shall be operated in any place of employment in this State unless a permit for the operation thereof is issued by the commission, and unless such permit remains in effect and is kept posted conspicuously in the elevator car."

Appellant's proposed instructions based on this section were as follows: The first instruction was merely a statement of the law contained in Labor Code, section 7301. The remaining instructions are:

1. "A violation of the section of the Labor Code just read to you on the part of Plaintiff would constitute negligence on his part, and if you believe that such negligence proximately contributed to the alleged injuries, if any, even in a slight degree, then the plaintiff cannot recover."

2. "I instruct you that Defendant Victor Upphoff could not waive the provisions of Section 7301 of the Labor Code of California, even by granting the Manager of the Doughnut Corporation permission to use the elevator before the inspection by the Industrial Accident Commission of the State of California."

3. "It is part of the law of the State of California that no elevator which is being installed can be used by the employees of the company for whom it is being installed until and unless it has been inspected by the Industrial Accident Commission and a certificate issued and posted in said elevator to that effect.

"This law was applicable to the employees of the Doughnut Corporation, and if plaintiff, as an employee of the

Doughnut Corporation, used said elevator in violation of this law, then plaintiff is guilty of negligence as a matter of law, and if such negligence proximately contributed in any way to his injuries, then he cannot recover, and your verdict should be for the Defendant Victor Upphoff."

4. "Ignorance of the law will not excuse anyone, and if you find from the evidence that plaintiff did not know of Section 7301 of the Labor Code, and used the elevator in violation thereof, this is no excuse on his part, and he would be guilty of negligence by reason thereof, and if such negligence proximately contributed in any way to the injuries he received, if any, then he cannot recover, and your verdict must be for the defendant."

He contends that failure to give the requested instructions was prejudicial error. However, the entire chapter of the Labor Code must be viewed as a whole. Section 7302 provides: "The operation of an elevator by any person owning or having the custody, management, or operation thereof without a permit is a misdemeanor, and each day of operation without a permit is a separate offense." The entire chapter is designed to prevent unnecessary occupational hazards.

■ Since section 7301 was designed to protect employees, it would be contrary to what we deem to be the intention of the Legislature to deny an employee the ability to recover for the negligence of his employer or a third person because of the latter's violation of the section.

In *McKeon* v. *Lissner*, 193 Cal. 297, 303 [223 P. 965], in discussing the law upon which the above sections of the Labor Code are based, the court said: "An examination of the statute discloses, as expressed in the first clause of its title, that it is 'an act for the periodical inspection of elevators operated in places of employment in this state,' etc. Sections 1 and 2 of the act seem designed to protect employees in the place where the elevator is maintained. . . .

"We cannot conceive that it was the intention and purpose of the legislature, in the passage of said act, to 'revolutionize' the law relating to the responsibility of owners and operators of elevators. We think that the act was intended merely for the purpose of providing additional safeguards in the type of elevators used and in the mechanism employed in their operation; and that the periodical inspection of the

same was provided for to the end that the public generally, as well as employees in the building where elevators are used, might have additional protection against injury or loss of life. The legislation was probably inspired through an enlightened appreciation of the value of human life, rather than for the purpose of relieving the owners and operators of all responsibility.''

Appellant cites a number of cases holding that violation of a statute or ordinance is negligence *per se.* (*Bay Shore Laundry Co.* v. *Industrial Acc. Com.,* 36 Cal.App. 547 [172 P. 1128]; *King* v. *San Diego Electric Ry. Co.,* 176 Cal. 266 [168 P. 131]; *Alechoff* v. *Los Angeles G. & E. Corp.,* 84 Cal. App. 33 [257 P. 569]; *Johnston* v. *Brewer,* 40 Cal.App.2d 583 [105 P.2d 365].) This doctrine is undoubtedly the law in California and there are innumerable cases so holding. However, in each of the cases cited by appellant the party seeking to make use of the statute was of the class of persons designed to be benefited by it.

That limitation has been expressed in the case of *Figone* v. *Guisti,* 43 Cal.App. 606, 608-610 [185 P. 694]: ''It has been held by the supreme court of this state that where a defendant violates the express provisions of a statute, that violation itself, when proven, establishes his negligence *per se.* [Citing numerous authorities.] In all of the foregoing cases, however, and in all others which we have been able to find, the violation of a statute has been held to establish negligence *per se* only in favor of one sought to be benefited by the violated statute. In other words, under the statute, a duty is owing to the persons coming within its protection, and as to such persons a violation thereof is negligence *per se.* The statute being considered here is plainly for the protection and benefit of the minor employee. It is a statute similar to those prohibiting the employment of children in certain dangerous occupations or for more than a stated number of hours each day. Such laws are enacted in the exercise of the police power for the protection and well-being of minors. (*Williams* v. *Southern Pac. Co.,* 173 Cal [525] 538 [160 P. 660].) 'It is a well-established principle that the violation of a statutory duty is the foundation of an action in favor of such persons only as belong to the class intended by the legislature to be protected by such statute.' (*Lepard* v. *Michigan Cent. R. Co.,* 166 Mich. 373 [40 L.R.A.N.S. 1105, 130 N.W. 668].) . . .

"It may be said that there is practically no dissent from the proposition that the violation of a statute or municipal ordinance is actionable negligence only as to a person for whose benefit or protection it was enacted, and that where the plaintiff does not belong to the class that the law was designed to protect, it follows that it will not avail to supply the element of duty owing. (*Indiana etc. Coal Co.* v. *Neal,* 166 Ind. 458 [9 Ann.Cas. 424, and note, 77 N.E. 850].) 'In an action based upon a neglect of duty, it is not enough for the plaintiff to show that the defendant neglected to perform a duty imposed by statute for the benefit of a third person, *and that he would not have been injured if the duty had been performed;* he must show that the duty was imposed for his benefit and was one which the defendant owed to him for his protection.' [Citing authorities.]" *Routh* v. *Quinn,* 20 Cal.2d 488, 491 [127 P.2d 1] ; *King* v. *San Diego Electric Ry. Co., supra,* 270 ; *Corbett* v. *Spanos,* 37 Cal.App. 200, 204 [173 P. 769]. ■ The court properly refused the instructions offered by appellant and set forth above.

■ Appellant further contends that, even assuming the above instructions were not proper, the lower court should have left to the jury the question of whether respondent's use of the elevator in violation of the statute was the proximate cause of the injury. Appellant does not however indicate what instructions were offered and refused and what instructions were given on this subject. The court did inform the jury that contributory negligence had been pleaded and it explained to the jury the doctrine of proximate cause and its duty to make application of that doctrine. With reference to this question, the jury appears to have been fully informed and no claim of error can be predicated on this basis.

■ A number of other instructions were offered by appellant and refused by the court. These instructions were based on the assumption that respondent was a licensee. Appellant admitted however that he had informed respondent's employer that the elevator was in condition to be operated by his employees, and that he, in fact, knew it was being so operated and urged its continued operation though certain defects had been pointed out to him. It follows that respondent using the elevator in the way and for the means for which appellant had fashioned it, was, if anything, not a licensee but was an invitee. Actually, however, in order to

make the doctrine of licensee applicable, appellant has had to assume that he was still in possession of the elevator. This assumption is not borne out by the facts. It is true that appellant was still bound by the contract to arrange for an inspection by the Industrial Accident Commission, but the elevator was a part of the premises; appellant was no longer working upon it, and he indicated that it could be, and in fact knew, that it was being used for the purposes of the business.

Actually appellant was not a proprietor or owner of the premises but was the manufacturer of an article inherently dangerous. As such he was responsible to the user and is chargeable with negligence if the defective condition was apparent or could have been disclosed by reasonable inspections or tests. (*Sheward* v. *Virtue,* 20 Cal.2d 410 [126 P.2d 345]; *Kalash* v. *Los Angeles Ladder Co.,* 1 Cal.2d 229 [34 P.2d 481]; *O'Rourke* v. *Day & Night Water Heater Co.,* 31 Cal.App.2d 364 [88 P.2d 191].) The instructions were properly refused.

The remaining ground of error specified by appellant is that the court admitted in evidence a photograph of the elevator taken after the board across the top of the slot had been removed. He argues that it is inadmissible as an attempt to show precautionary steps taken after an accident. Had it been admitted for such purpose or had such testimony been taken, the evidence would have been inadmissible. (*Sappenfield* v. *Main St. etc. R. R. Co.,* 91 Cal. 48 [27 P. 590]; *Helling* v. *Schindler,* 145 Cal. 303 [78 P. 710].) The photograph in question was introduced solely for the purpose of enabling the jury to understand the operation of the elevator. Its condition at the time of the accident was fully explained. There was no testimony that the removal of the board was taken as a precaution or that it rendered the elevator safer for use. Had the jury viewed the premises at the time of trial, they would have seen the elevator in the condition portrayed. Although the introduction of the photograph may appear to be questionable, it cannot be held to be prejudicial. (*Hayes* v. *Emerson,* 110 Cal.App. 470 [294 P. 765].)

The judgment and order appealed from are affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing was denied May 6, 1944, and appellant's petition for a hearing by the Supreme Court was denied June 1, 1944.