[Civ. No. 17360.  Second Dist., Div. Three.  Oct. 27, 1950.]

GEORGE KAZUO SOGAWA, Respondent, v. DEPARTMENT OF MOTOR VEHICLES et al., Appellants.

Fred N. Howser, Attorney General, and Walter L. Bowers, Assistant Attorney General, for Appellants.

Maeno & Aiso and John F. Aiso for Respondent.

SHINN, P. J.—In this proceeding in mandate judgment was entered ordering the Department of Motor Vehicles and

the director thereof to rescind an order suspending plaintiff's chauffeur's license. The ground of suspension was that plaintiff had been involved in an automobile accident which had resulted in damage to motor vehicles in an amount exceeding $100 and had failed to deposit security in the amount of $1,500 as demanded by the Department of Motor Vehicles. (Veh. Code, §§ 419 to 420.2.) The defendants appeal. No evidence was introduced at the trial. The judgment appears to have been rendered on the pleadings, amplified by statements of counsel.

Plaintiff held only a chauffeur's license. The suspension of the license took place while original sections 419 to 420.9 were in force. (Stats. 1947, ch. 1235, § 1.) The question is whether defendants had authority on April 6, 1949, to revoke plaintiff's license. Section 419 provided, in part, that "The operator of every motor vehicle which is in any manner involved in an accident within this State, in which any person is killed or injured, or in which damage to the property of any one person including himself, in excess of One Hundred Dollars ($100) is sustained, shall within 10 days after such accident report the matter in writing to the department." Section 420 authorized the Department of Motor Vehicles to suspend the license "of each operator" who is involved in such an accident unless such "operator" shall deposit security in any amount deemed sufficient by the department to satisfy any judgment or judgments for damages resulting from such accident as may be recovered against such "operator" (or the owner, if the operator is not the owner of the vehicle). These general provisions are subject to certain exceptions, which do not apply in plaintiff's case.

Plaintiff argues that all the provisions of the above financial responsibility sections which refer to licenses of "operators," should be construed as applying to "operators' licenses" but not to "chauffeurs' licenses." He says that the only definitions of "operators" and "chauffeurs" are found in sections 70 and 71 of the Vehicle Code and that under these definitions he was not an "operator" whose license could be suspended. Section 70 reads: "'Operator' is a person, other than a chauffeur, who drives or is in actual physical control of a motor vehicle upon a highway." and section 71 reads: "'Chauffeur' is a person who is employed by another for the principal purpose of driving a motor vehicle on the highways and receives compensation therefor." One need not be a chauffeur to secure a chauffeur's license. (Veh. Code, § 265.)

The fact that he holds a chauffeur's license makes it unnecessary for him to procure an operator's license (§ 256), but it does not make him a chauffeur within the definition of section 71. Therefore, one who holds a chauffeur's license, but is not a chauffeur, and who drives upon a highway is an "operator" as defined by section 70.

Plaintiff's contention that the Department of Motor Vehicles was without authority to suspend his chauffeur's license has no support in the applicable provisions of the Vehicle Code. If it be assumed, as plaintiff argues, that the operators of vehicles whose licenses may be suspended are those only who are defined as operators by section 70, the allegations of the petition do not remove him from that classification. He was an "operator" unless he was a "chauffeur" and he did not allege that he was a chauffeur, namely, one who was employed by another for the principal purpose of driving a motor vehicle on the highways and receiving compensation therefor. He alleged only that he is "a house servant whose duties include chauffeuring." The reasonable understanding of this allegation is that his principal duties were those of a house servant. Neither did he allege that he was acting at the time of the accident in the service of his employer as a chauffeur, although such an allegation would not have cured the insufficiency of his petition. It therefore avails plaintiff nothing to contend that the only operator whose license may be suspended is one who is defined as an operator by section 70. Holding a chauffeur's license does not make a houseboy a chauffeur.

However, we do not agree with the construction of sections 419 and 420 contended for by plaintiff. In substance his argument is that one who holds a chauffeur's license is not an operator within the meaning of those sections, for the reason that wherever the words "license of the operator" are used, they should be construed to mean "operator's license," thus exempting the holders of chauffeurs' licenses. The difficulty with this argument is that the sections do not make this distinction, but apply to the licenses of all operators of vehicles, whether they be operators' licenses or chauffeurs' licenses. There is no exception of the licenses of chauffeurs, nor is there an exception of "chauffeurs' licenses" which, as we have seen, may be held by those who are not chauffeurs.

The judgment must be reversed for the reasons stated. Even if plaintiff should be able to prove that he was a chauffeur, as defined by section 71, and was acting as such at the

time of the accident, such proof would not entitle him to a judgment directing the restoration of his suspended license.

It was alleged in the answer that at the time of the accident plaintiff was acting as an "operator" within the definition of section 70 of the Vehicle Code, and was not at the time a chauffeur, or acting as such. It is contended by appellant that these allegations must be deemed to be true under the rules pertaining to proceedings in mandate, since they were not controverted by plaintiff's proof. (See *Loveland* v. *City of Oakland*, 69 Cal.App.2d 399, 403 [159 P.2d 70].) Plaintiff replies that defendants, at the trial, induced him not to produce any evidence and should be held estopped to take advantage of his failure to disprove the affirmative allegations of the answer. It is unnecessary to discuss these contentions. Insufficient facts were alleged by plaintiff to entitle him to the relief he seeks.

The judgment is reversed.

Wood (Parker), J., concurred.

VALLÉE, J.—I dissent. I do not find anything in section 265 of the Vehicle Code that says, either expressly or by implication, "One need not be a chauffeur to secure a chauffeur's license." On the contrary, the section clearly indicates that the Department of Motor Vehicles, in determining whether a "chauffeur's" license shall issue, must determine whether the applicant is a "chauffeur" within the meaning of section 71. Section 265 says that the applicant for a license shall furnish the department, among other things, with information as to the kind of license applied for, whether he has previously been licensed as a "chauffeur," whether he has previously been refused a "chauffeur's" license, and "Any other information necessary to enable the department to determine whether the applicant is entitled to a license under this code. An applicant for a chauffeur's license may state the type of vehicle or combination of vehicles he desires to operate."

Section 70 says that an "operator" is a person, "*other than a chauffeur.*" (Emphasis added.) Section 71 defines a "chauffeur" as "a person who is employed by another for the principal purpose of driving a motor vehicle on the highways and receives compensation therefor." Section 132 provides: "The department shall examine and determine the

genuineness and regularity of every application . . . for an operator's or chauffeur's license . . . and may in all cases require additional information and reject any such application if not satisfied of the genuineness and regularity thereof or the truth of any statement contained therein." Section 250 provides: "(b) It is a misdemeanor for any person to drive a motor vehicle upon a highway as a chauffeur unless he then holds a chauffeur's license duly issued hereunder, except such persons as are expressly exempted under this code." Section 255 provides: "Any person duly licensed as an operator hereunder may after application for a chauffeur's license and pending examination and action by the department thereon, drive a motor vehicle on the highways as a chauffeur." An "operator's" license may be issued to any person over the age of 16 years. (§ 257.) Section 258 provides that "No chauffeur's license shall be issued to any person under the age of 18 years." Section 268 provides that "Every applicant for a chauffeur's license shall be required to submit to an examination appropriate to the type of vehicle or combination of vehicles he desires a license to drive." Section 271 says that the department may refuse to issue a "chauffeur's" license if it determines that the applicant has made, or permitted to be made, unlawful use of a chauffeur's license. Section 272 says that " (a) . . . The department may issue: (1) A general chauffeur's license; (2) A restricted chauffeur's license. (b) The department upon issuing a restricted chauffeur's license shall indicate thereon the type of vehicle or combination of vehicles the licensee is licensed to operate." Section 334 provides that "No person shall employ or hire as a chauffeur of a motor vehicle any person not then duly licensed hereunder so to drive."

It is clear to me that it is the duty of the department not to issue a "chauffeur's" license to one unless such person is a "chauffeur" as defined by section 71. I cannot assume that the department failed in, or violated, its duty when it issued a "chauffeur's" license to respondent. Therefore, when respondent alleged that he was a licensed "chauffeur" and the holder of a "chauffeur's" license issued by the department at the time of the accident (facts admitted by appellant), it must be presumed that he was acting as a "chauffeur."

My views on the power of the department to suspend respondent's "chauffeur's" license are those expressed by the Appellate Department of the Superior Court of the

County of Los Angeles in its opinion in *Norris* v. *Department of Motor Vehicles* (Superior Court No. 549913).[1] That opinion reads: "Plaintiff herein, to whom a chauffeur's license has heretofore been issued pursuant to the provisions of the Vehicle Code, seeks an injunction to prevent the defendant Department of Motor Vehicles of the State of California and A. H. Henderson, Director of said department, from enforcing against him the provisions of sections 419 to 420.9, inclusive, of the Vehicle Code, and particularly from demanding a cash deposit as security under the provisions thereof and from suspending his license as a chauffeur in the event he fails to make such deposit. Defendants have presented a general demurrer to the complaint and by stipulation the demurrer has been argued both orally and by written briefs.

"Plaintiff relies upon two contentions to sustain his position: first, that the provisions of said sections do not apply to a person to whom a chauffeur's license has been issued and do not authorize the suspension of such a license, and, second, that said sections are unconstitutional in that they are in violation of the Fourteenth Amendment to the Constitution of the United States and of article I, section 11, of the California Constitution. As we find ourselves in accord with the first contention, it is both unnecessary and inappropriate to consider the second—for if, as we have concluded, they do not apply to plaintiff, he is in no position to attack their validity.

"Section 420 provides in part as follows: '(a) The department shall, within 60 days after the receipt of a report of a motor vehicle accident within this State which has resulted in bodily injury or death or damage to the property of any person in excess of one hundred dollars ($100) suspend the license of each operator of a motor vehicle in any manner involved in such accident, and if such operator is a nonresident the privilege of operating a motor vehicle within this State, unless such operator shall deposit security in a sum which shall be sufficient in the judgment of the department to satisfy any judgment or judgments for damages resulting from such accident as may be recovered against such operator or owner. Notice of such suspension shall be sent by the department to such operator not less than 10 days prior to the effective date of such suspension and shall state the amount required as security.

---

[1]Published in the Los Angeles Daily Journal, February 11, 1949.

" ' (b) Subdivision (a) shall not apply under the conditions stated in Section 420.1 or to any of the following:

" ' (1) To such operator if the owner had in effect at the time of such accident an automobile liability policy with respect to the motor vehicle involved in such accident;

" ' (2) To such operator, if not the owner of such motor vehicle, if there was in effect at the time of such accident an automobile liability policy or bond with respect to his operation of motor vehicles not owned by him;

" ' (3) To such operator if the liability of such operator or owner for damages resulting from such accident is, in the judgment of the department, covered by any other form of liability insurance policy or bond; or

" ' (4) To any person qualifying as a self-insurer under Section 420.7.'

"It will be noted that the word 'operator' is used nine times in the quoted portion. At the time that sections 420 to 420.9, inclusive, were added to the Vehicle Code that statute had for a long time contained (and still does) the following definitions: 'Sec. 69, Driver. "Driver" is a person who drives or is in actual physical control of a vehicle.' 'Sec. 70. Operator. "Operator" is a person, other than a chauffeur, who drives or is in actual physical control of a motor vehicle upon a highway.' 'Sec. 71. Chauffeur. "Chauffeur" is a person who is employed by another for the principal purpose of driving a motor vehicle on the highways and receives compensation therefor.' In Section 256 it is provided that 'Any person duly licensed as a chauffeur hereunder need not procure an operator's license.'

"In the case of *Stillwell* v. *State Bar* (1946), 29 Cal.2d 119, at 123 [173 P.2d 313], the Supreme Court expressed the rule of interpretation applicable hereto as follows: 'It may be presumed that the Legislature, in passing the amendatory legislation, had in mind the original act (see *Robbins* v. *Omnibus Ry. Co.*, 32 Cal. 472, 474; 1 Sutherland on Statutory Construction (3rd ed.) § 1933), and it is a well-established rule of construction that when a word or phrase has been given a particular scope or meaning in one part or portion of a law it shall be given the same scope and meaning in other parts or portions of the law. (*Coleman* v. *City of Oakland*, 110 Cal.App. 715 [295 P. 59]; *Ransome-Crummey Co.* v. *Woodhams*, 29 Cal.App. 356 [156 P. 62].)'

"In *Burton E. Green Inv. Co.* v. *McColgan* (1943), 60 Cal. App.2d 224, 233 [140 P.2d 451], it is said: 'The Legislature

could not have intended to use a significant word in two different senses in the same statute. (*Ransome-Crummey Company* v. *Woodhams*, 29 Cal.App. 356 [156 P. 62]; *Coleman* v. *Oakland*, 110 Cal.App. 715 [295 P. 59].)'

"For further cases indicating the controlling effect of a statutory definition for all the purposes of that statute, see: *County of Ventura* v. *Barry* (1929), 207 Cal. 189, 195 [277 P. 333]; *Jameson Petroleum Co.* v. *State* (1936), 11 Cal.App.2d 677, 680 [54 P.2d 776]; *Coleman* v. *Oakland* (1930), 110 Cal. App. 715, 719 [295 P. 59]; *Hunstock* v. *Estate Dev. Corp.* (1943), 22 Cal.2d 205, 210 [138 P.2d 1, 148 A.L.R. 968]; *Bay Shore Laundry Co.* v. *Industrial Acc. Com.* (1918), 36 Cal.App. 547, 551 [172 P. 1128].

"In *Lockhart* v. *Wolden* (1941), 17 Cal.2d 628, at 631 [111 P.2d 319], it is said that 'where the language of a statute is clear, plain and unambiguous there is no room for construction, strict or otherwise' and in *Prager* v. *Israel* (1940), 15 Cal.2d 89, 93 [98 P.2d 729], the Supreme Court has said that 'any construction should be avoided which implies that the Legislature was ignorant of the meaning of the language so employed, or that it used words in vain. . . .'

"As the Legislature, in the very statute under consideration, has defined in simple and unmistakable language the words 'operator' 'chauffeur' and 'driver,' it is not within the province of this court to say that when it used one of those words (operator) it intended to use one or both of the other two.

"If, as we hold, there is no statute authorizing defendants to do what they are undertaking to do, an injunction restraining them from doing so is not in violation of Code Civ. Proc. section 526."

I would affirm the judgment.